[Civ. No. 19623.   Second Dist., Div. One.   Nov. 5, 1953.]

SUE ALICE JONES, Respondent, v. EDITH JONES KELLEY, Appellant.

[Civ. No. 19624.   Second Dist., Div. One.   Nov. 5, 1953.]

EDITH JONES KELLEY, Appellant, v. SUE A. JONES, Respondent.

Ball, Hunt & Hart for Appellant.

Elsie M. Farris and Mary Swift Beeks for Respondent.

DRAPEAU, J.—Mr. and Mrs. Jones were married October 22, 1938. He was then 62 years of age; she was 60. It was a second marriage for each of them. He had one child by his prior marriage; she had two by hers. They lived together until Mr. Jones died of cancer August 6, 1950.

During the marriage Mrs. Jones sold some of her separate property and purchased a house in Long Beach. This house fitted her purposes: first, for a home for her and her husband, and, secondly, for an office for her business as a realty broker.

When the escrow instructions for this purchase were first drawn Mrs. Jones directed that the deed be made to her as her separate property.

Before the escrow closed she changed her instructions and directed that the property be conveyed to her and her husband as joint tenants. This was done.

Mrs. Jones testified on the trial in this case that she had the title so vested because she wanted to be sure her husband would have a home if she should die first, and because of her agreement with him that the property should go to the survivor of them, without regard to any of their children. In other words, husband and wife agreed that neither of them would break the unity that exists in joint tenancy and that the property was to go to the one who survived the other.

This is clear from Mrs. Jones' testimony: "As near as I can remember, I said, 'Well, Morris, I am paying for the property, but I want it in joint tenancy,' so if anything happened to me, it would be his property, and if anything happened to him, it would be my property. We had that definite understanding."

Mr. Jones did not keep his agreement. About a week before he died his daughter, Edith Jones Kelley, stayed with him for part of a day, at the request of Mrs. Jones. While Mrs. Jones was away on business, Mr. Jones had his daughter make an appointment with an attorney. Then Mr. Jones and his daughter went to the attorney's office.

There Mr. Jones asked the attorney to prepare a will for him. In discussing the terms of his proposed will it developed that the only property Mr. Jones owned was his joint tenancy interest in the house referred to. So the attorney told him he didn't need to make a will; all he had to do was to convey his interest in the property by deed to a third person.

Then Mr. Jones asked his attorney to prepare such a deed, conveying his interest in joint tenancy in the property to

his daughter. So a quitclaim deed was prepared, executed by Mr. Jones, and delivered to his daughter. The deed was then left in the attorney's office, to be sent to the recorder's office.

It is hard to rationalize Mr. Jones' conduct. His wife had given him the best of care. She nursed and took care of him during his last illness. Before that he had been in an accident, in a cast, and laid up for a year or more. His wife took care of him and nursed him through that siege, too. She was always devoted to him.

Perhaps as the sable messenger of death came closer and closer, Mr. Jones lost his power mentally to marshal all his duties and obligations, and could think of his daughter only. Perhaps it was with him as the trial judge quoted from Gray's Elegy: "On some fond breast the parting soul relies."

In any event, to her consternation and dismay, Mrs. Jones first learned of the deed after her husband had been buried.

Then followed an action to quiet title by Mrs. Jones, an action in partition by Mrs. Kelley, a trial upon the issues in the actions, which were consolidated for trial, with judgment in both cases for Mrs. Jones, from which judgments Mrs. Kelley appeals.

When the case was submitted for decision the trial judge stated his conclusions as follows:

". . . the property was put in that position for the joint benefit of the parties. The trust didn't differ in any respect from the joint tenancy, except in this respect: That in joint tenancy I believe that it is within the power of a person to convey out their half, their undivided one-half interest, and yet that was not the intent, and that was not the agreement. It was the intent and it was the agreement that the property would be held for their benefit and for the survivor of them, and I am unable to escape that that is a trust.

"Therefore, the judgment in *Jones* v. *Kelley* will be that it is declared and adjudged that the defendant has no estate or interest whatsoever in the real property that is the subject of the action, and it is adjudged that the plaintiff is the owner of said premises and entitled to the possession thereof, and that the defendant is forever debarred and enjoined from asserting any claim whatsoever in the premises.

"As to the second one, the partition, the judgment is that the plaintiff take nothing."

Appellant argues that the trial court in making its finding that the husband held the property in trust was referring to

a resulting trust; that the rule that when the purchase price is paid by another, a resulting trust follows does not apply when the person receiving title to property is the natural object of the bounty of the person paying for it; that when property is taken in the joint names of payor and one who is the natural object of the bounty of payor, payor must show by substantial evidence that a gift was not intended; and that taking the title in joint tenancy was an indication of intention by the wife to make a beneficial gift to the husband.

The controlling question here is whether the wife intended to limit her gift represented by the deed in joint tenancy, and whether her husband agreed to take the deed subject to such limitation.

In *De Boer* v. *De Boer*, 111 Cal.App.2d 500, 504 [244 P.2d 953], it is held that an estate in real property may be found to be other than that indicated by the deed because of the intent with which the deed was made and received.

In *Socol* v. *King*, 36 Cal.2d 342 [223 P.2d 627] a judgment quieting title in the survivor of a joint tenancy was affirmed for the reason that there was no understanding between the parties that they held title other than as joint tenants. ▬ In that case the rules to be applied in the case at bar, together with the authorities in support thereof, are set forth:

First. The form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property. ▬ Property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse *according to the intention, understanding or agreement of the parties*. (P. 345.)

Second. ▬ When there is an oral or written agreement as to the ownership of the property, or where such an understanding may be inferred from the conduct and declarations of the spouses the terms of the deed are not controlling. (P. 346.)

Third. ▬ The presumption of a resulting trust arises where title to property is taken in the name of the husband and the consideration for the transfer is furnished by the wife. ▬ The existence of a resulting trust will be presumed, to the extent that a gift was not intended, in favor of one who has paid the entire purchase price of property which is conveyed to the trust claimant and another as joint tenants; that is the second party holds the title to a joint interest in trust for the claimant. ▬ But the burden of

proving the elements necessary to establish a resulting trust rests on the party asserting it.   (P. 348.)

In the earlier case of *Huber* v. *Huber,* 27 Cal.2d 784, at page 790 [167 P.2d 708] it is stated:

"In this state it is settled that because of the confidential relationship between husband and wife, an oral agreement between the spouses in connection with a conveyance of real property between them or by a third person to one of them can be enforced by making the grantee a constructive trustee for the other spouse if the grantee violates such an oral agreement."

The case of *Trimble* v. *Coffman,* 114 Cal.App.2d 618 [251 P.2d 81], upon which appellant relies, is not contrary to any of the rules above set forth.   In that case it was held that the evidence was sufficient to sustain the trial court's findings that no agreement existed between a husband and wife who held property in joint tenancy upon which it was contended a resulting trust could be predicated.   And in that case the District Court of Appeal approves the rules above stated and points out that whether there is or is not a resulting trust is primarily a question for the determination of the trial judge.

Tried by these rules it follows logically that the delivery of the deed in joint tenancy to Mr. Jones by Mrs. Jones, who paid the purchase price, is not conclusive evidence of the status of the title to the property, and that it was the province of the chancellor in equity to take into consideration all the facts and to declare whether or not there was a resulting trust.   Examination of the record establishes that the testimony for Mrs. Jones amply sustains the burden upon her of proving the resulting trust by clear and convincing evidence.

The judgments are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.