[Civ. No. 24173.   Second Dist., Div. One.   May 19, 1960.]

AMY S. McKINNON, Appellant, v. JAMES A. McKINNON et al., Respondents.

S. V. O. Prichard for Appellant.

Charles Hollopeter, Harold J. Angerhofer and Joseph C. Brashares for Respondents.

FOURT, J.—This is an appeal by the plaintiff from that portion of the judgment pertaining to the disposition of certain property in a divorce proceeding.

A résumé of the facts is as follows:

The parties were married on October 5, 1945. At the time of the marriage Mr. McKinnon did not have any property except a bank account in which, as he testified, there was approximately $5,000. At that time he was employed by a company at a monthly salary of approximately $500 per month.

Mrs. McKinnon, at the time of the marriage was employed by the Asbury Apartment Hotel at a monthly salary of $400. She also was the owner of an undivided one-third interest in said hotel. Three years later (i.e. 1948) she received approximately $160,000 for her one-third interest upon the sale of the hotel.

During the period from September, 1946 to March, 1947,

she purchased from Leon Grivel a one-half interest in a building supply business for $30,000. The business was conducted under the name "General Builders Supply Company." As stated in respondents' brief:

"There is no conflict in the evidence as to the original source of the money that was used to create the valuable property interests of plaintiff and defendant. *Defendant at all times conceded that his wife purchased a partnership interest in a business with Leon Grivel by using her own separate property for such purchase.*" (Emphasis added.)

In 1948, the remaining one-half of the partnership interest was purchased from Leon Grivel for the sum of approximately $71,000. As respondents also stated in their brief:

"It is likewise equally clear that at least the major portion of the funds used for the purchase of the remaining interest of Mr. Grivel in the supply company business came from money owned by plaintiff." The record discloses that the precise passage of the checks from her funds was traced. Mr. McKinnon in his testimony did not claim that he had given any part of the $71,000 to his wife or to Mr. Grivel. He also denied that he had executed a note in that sum in favor of his wife. There was a conflict in the testimony as to whether any partnership arrangement between them was discussed. In any event no partnership agreement was ever drawn or executed.

When the second half of the business was acquired from Mr. Grivel, a new set of books was opened. The books reflected that each party owned one-half of the company. She kept the books, and he did not participate in any way or at any time in the bookkeeping activities or with the preparation of income tax returns. He testified that he did not know how the accounts were kept and in particular that he did not know how the capital accounts were arranged.

The business was operated as if it were a partnership. Mrs. McKinnon identified federal partnership tax returns for the years 1948 through 1954, and individual state and federal tax returns for the years 1950 through 1956, together with 1957 estimated tax and she admitted that taxes were paid on the basis of the partnership books and that the returns showed an equal partnership interest.

When appellant was questioned with reference to her deposition taken on May 23, 1958, she admitted in answer to the following questions that the following was her testimony:

"Question. Is it your testimony that a partnership was created? A. Yes.

"Q. He was a partner. Who was the other partner? A. I was the other partner."

When a withdrawal from the business account was made, it was charged one-half to the "drawing account" of each spouse.

During the operation of the General Builders Supply Company (hereinafter referred to as "General Builders") various assets were acquired. Land was acquired and set up as an asset in the "land" account. For each fixed asset a separate account was established. These purchases were made with the money of General Builders. During this period an interest in Pan Pacific Manufacturing Company and Reno Land and Development Company was acquired and each was set up as an asset of General Builders.

In August, 1955, the form of the business was changed. At this time the assets of General Builders were divided into three blocks. One block of assets, consisting of land and race horses, was used for the formation of the Jamy Corporation. The stock of the Jamy Corporation was issued, 261 shares to each of the parties. A second block of assets, consisting of the business as such, was used for the formation of the Southern California General Builders Supply Company (hereinafter referred to as "Supply Corporation"). The stock of the "Supply Corporation" was issued; 166 shares to Mrs. McKinnon, 166 shares to Mr. McKinnon, and 166 shares to one Don A. Hendricks. Subsequently, the Supply Corporation was assigned to creditors.

The third block of assets, consisting of the interest in Reno Land and Development Company, in Pan Pacific Manufacturing Company and finally in Adhesive Metals was not placed in either of the newly formed corporations.

Mrs. McKinnon testified that Adhesive Metals, during the partnership, was charged off as an expense of the partnership and later as an expense of the corporation against both her and Mr. McKinnon's accounts; that Reno Land and Development Company was taken in his name and that she and Mr. McKinnon held an equal share in the Pan Pacific Manufacturing Company. As to Pan Pacific Company, each held eighteen per cent of the total after selling seven per cent to different persons. Each held the notes (ex rel. the seven per cent) from the various persons.

Mrs. McKinnon kept the books and accounts for the corpo-

rations, and she admitted that she had furnished the data to the accountant to use in the preparation of the corporation tax returns and the individual tax returns of herself and Mr. McKinnon after the formation of the corporations.

On re-cross-examination she admitted that she had testified as a witness for the prosecution in a criminal trial against her husband, Mr. McKinnon, wherein the following questions and answers were given:

"Q. Well, actually your interest is a half interest in the corporation that owns the real property, is that what it is? A. No. There is a corporation that does business, and I have a one-third of the corporation known as 'Building Material Company' [i.e. Supply Corporation] business. Then the building material business rents the property from a corporation that Mr. McKinnon and I each own half of.

"Q. I see. How do you and Mr. McKinnon own that property? What title is it? A. It is in Jamy Corporation. It is in a corporation, too."

Appellant's first contention is that the trial court erred in failing to make findings "as to the Process by Which Property Which Admittedly Was the Separate Property of Mrs. McKinnon Became the Separate Property of Mr. McKinnon."

" 'The purpose of findings "is to answer the questions put by the pleadings." ' " (*Bertone* v. *City & County of San Francisco,* 111 Cal.App.2d 579, 585 [245 P.2d 29]; *Moore* v. *Craig,* 5 Cal.App.2d 283, 285 [42 P.2d 647].)

The trial court has the opportunity to place upon record its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which the judgment rests. (*Frascona* v. *Los Angeles Ry. Corp.,* 48 Cal.App. 135, 137 [191 P. 968].)

The findings should, of course, be definite and certain. (*Sharove* v. *Middleman,* 146 Cal.App.2d 199, 201 [303 P.2d 900]; *Andrews* v. *Cunningham,* 105 Cal.App.2d 525, 528 [233 P.2d 563].)

There can be no doubt that the issue of whether there was a "trust" was before the court. Paragraph V of the "Second Amended Complaint for Divorce" provides as follows:

"V.

"Plaintiff alleges that the following described property, being a portion of the property now held by defendants is the sole and separate property of plaintiff, *having been purchased with the separate funds of plaintiff or the proceeds thereof*

or having been taken from plaintiff without her knowledge or consent:

"(a) Cash and other property in an unknown amount;

"(b) 251 shares of stock of the Jamy Corporation, a California corporation;

"(c) 166 shares of the Southern California General Builders Supply Co., a California corporation;

"(d) 18% of the issued capital stock of the Pan-Pacific Manufacturing Corp., a California corporation; proceeds from sale of 7% of stock of said corporation and promissory notes thereon;

"(e) 20% interest in the Reno Land and Development Co.;

"(f) An undisclosed interest in a partnership with defendant Rowland A. Miller, dba Adhesive Metals;

"(g) Memberships in the San Fernando Valley Club, El Caballero Club, Racquet Club of Palm Springs, and California Club.

"That plaintiff was induced to permit said property to be placed in the name of defendants upon defendant James A. McKinnon's representation that it was convenient and for plaintiff's best interests. That plaintiff was not represented by counsel at the time and had no independent advice, but relied upon the representations of defendant James A. McKinnon, and believed his representations that said property would be restored to her upon her request. Plaintiff has demanded of defendant James A. McKinnon the restoration of said property, but defendant James A. McKinnon has refused and still refuses to restore same to plaintiff."

Paragraph I of the "Answer to Second Amended Complaint for Divorce" provides:

"I.

"In answer to Paragraph V thereof, generally and specifically deny each and every allegation therein contained.

"Further answering said paragraph defendants are informed and believe and upon such information and belief allege that items (a), (b), (c), (d), (e), (f), and (g) are in the name of and belong entirely to defendant James A. McKinnon."

The pretrial conference order filed July 24, 1958, expressly incorporated by reference a "Joint Pre-Trial Statement . . ." of the parties. This latter document provides in pertinent part as follows:

"ADMISSIONS IN PLEADINGS

" .   .   .   .   .   .   .   .   .

"1.   .   .   .   .   .   .   .   .

"2.   .   .   .   .   .   .   .   .

"3.   .   .   .   .   .   .   .   .

"4. Each of the parties have in their separate names the following equal amounts of property:

"(a) 251 shares of stock of the Jamy Corporation.

"(b) 166 shares of stock of Southern California General Builders Supply Co., a California corporation. . . .

"(c) 18% of the issued capital stock of the Pan Pacific Manufacturing Corporation, a California corporation.

"(d) Proceeds from the sale of 7% of the stock of Pan Pacific Manufacturing Corporation, represented by four promissory notes from employees of said corporation and one promissory note from said corporation, said notes totalling $24,348.34.

"5. In addition, . . . James A. McKinnon, has standing in his name the following items of property: a 20% interest in . . . a Nevada corporation; membership in the El Caballero Club, . . . membership in the Racquet Club of Palm Springs, and the California Club. . . . A one-half interest in a partnership with defendant, Rowland A. Miller, doing business as Adhesive Metals Company or its successor, Adhesive Metals Company, a California corporation.

" .   .   .   .   .   .   .   .   .

"GENERAL ISSUES APPARENT FROM PLEADINGS
AND REMAINING TO BE TRIED

"1.   .   .   .   .   .   .   .   .

"2.   .   .   .   .   .   .   .   .

"3. What is the status (as to being either separate or community) of the property standing in the name of both the plaintiff and the defendant, and if any of said property is determined to be community property, how is the community property to be divided?

"CONTENTIONS OF THE PARTIES

"It is the plaintiff's contention that all of the property set forth above and standing in her separate name is her separate property, and that all of the property set forth above and standing in the name of the defendant is likewise her separate property. It is the defendant's contention that all of the property set forth above and held in the separate names of the

plaintiff and the defendant is the separate property of the defendant or is the community property of the parties hereto or is the separate property of the plaintiff and defendant as so held.'' (Emphasis added.)

Subsequently, during the course of the trial, counsel for each party in effect stated to the court that there was no community property and no contention was made by either party to the contrary.

As stated in 49 California Jurisprudence 2d, Trusts, section 357, at page 196:

''In the absence of evidence of a gift or other countervailing circumstances, *where property is acquired in the name of one person, for a consideration furnished by another, the grantee holds the title on a resulting trust for the one who furnished the consideration.*'' (Emphasis added.)

This presumption is applicable both in the case of real property (Civ. Code, § 853) and personal property. (*Henry* v. *General Forming, Ltd.*, 33 Cal.2d 223, 226 [200 P.2d 785]; *Goes* v. *Perry*, 18 Cal.2d 373, 379 [115 P.2d 441]; *Grant* v. *Heverin*, 77 Cal. 263, 265 [18 P. 647, 19 P. 493]; *Kirk White & Co.* v. *Bieg-Hoffine Co.*, 6 Cal.App.2d 188, 191 [44 P.2d 439]; *Thompson* v. *Bank of California*, 4 Cal.App. 660, 667 [88 P. 987].) The presumption is evidence to be weighed along with the other facts in the case.

The presumption that there was a trust, *and not a gift*, arises where title to the property is taken in the name of the husband and the consideration for the transfer is furnished by the wife. The burden of proving the elements necessary to establish a trust rests upon the party asserting its existence. ''The form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property.'' (See *Jones* v. *Kelley*, 121 Cal.App.2d 130, 134 [262 P.2d 859].)

In the ''Findings of Fact'' filed December 12. 1958, Finding No. V provides:

''V.

''That it is true that there is separate property of the defendant, James A. McKinnon, as follows:

''(a) 251 shares of stock of the Jamy Corporation;

''(b) 166 shares of the Southern California General Builders Supply Company;

''(c) 18% of the issued capital stock of the Pan Pacific Manufacturing Corporation, and the proceeds from the sale

of 7% of stock of said corporation and the promissory notes thereon;

"That it is not true that membership in the El Caballero, Racquet and California Clubs are plaintiff's separate property.

"That it is not true that the 20% interest in the Reno Land and Development Company is the separate property of plaintiff.

"That it is not true that an interest in a partnership with Rowland A. Miller is the separate property of plaintiff."

In the "Conclusions of Law," paragraph III, it is provided:

"III.

"That defendant, James A. McKinnon, is entitled to the following as his separate property:

"(a) 251 shares of stock of the Jamy Corporation;

"(b) 166 shares of the Southern California General Builders Supply Company;

"(c) 18% of the issued capital stock of the Pan Pacific Manufacturing Corporation, and the proceeds from the sale of 7% of stock of said corporation and the promissory notes thereon;

"(d) Membership in the El Caballero Club, Racquet Club of Palm Springs, and California Club;

"(e) A 20% interest in the Reno Land and Development Company; and

"(f) An undivided interest in a partnership with defendant, Rowland A. Miller dba Adhesive Metals."

As indicated from the above, there were no conclusions of law, nor did the Judgment dispose of the property listed under (d), (e), or (f), *supra*.

This case, in our opinion, comes within the rule stated in *Fairchild* v. *Raines,* 24 Cal.2d 818, 830 [151 P.2d 260]:

"Where a trial court makes findings upon all essential ultimate facts it is not error to fail to find upon evidential matters (Citations) but this rule is not applicable in an equity suit where probative facts, which are material to the exercise of sound judicial discretion . . ., are pleaded and are supported by competent evidence. . . . under such cir-cumstances, *the probative facts as pleaded in themselves constitute material issues,* (and) the rule stated in *James* v. *Haley,* (1931), 212 Cal. 142, 147 [297 P. 920], is controlling: 'Ever since the adoption of the codes, it has been the rule that find-

ings are required on all material issues raised by the pleadings and evidence, unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed.' '' (Emphasis added.)

While it is well settled that ownership or title may be pleaded as an ultimate fact and may be so found without any additional finding of the particular facts upon which title depends, it is also true that in this particular case, the issue of whether there was a trust was before the trial court. Appellant was entitled to a finding thereon. Here the issue upon which no finding was made was one which of necessity was indispensable to the final decision by the judge and was one upon which, from the evidence before the court, a finding favorable to the appellant could have been made. (See *Maulhardt* v. *California Director of Public Works,* 168 Cal.App.2d 723, 731 [336 P.2d 631].) Further, the trial court rendered an incomplete judgment in failing to provide for the disposition of a part of the property in dispute.

Under the circumstances it is unnecessary to consider the other contentions of the appellant.

Judgment reversed.

Wood, P. J., and Lillie, J., concurred.