[No. A016081. First Dist., Div. Five. June 4, 1984.]

In re the Marriage of PAULA S. and DALE E. LEVERSEE.
PAULA S. LEVERSEE, Appellant, v.
DALE E. LEVERSEE, Appellant.

## COUNSEL

Frank S. McGorty for Appellant Wife.

Craig A. Leri for Appellant Husband.

## OPINION

**KING, J.**—In this case we hold that a residence acquired in joint tenancy before marriage, not shown to be the subject of an agreement to hold it as community property, must be characterized as true joint tenancy property over which the court in a dissolution proceeding under the Family Law Act has no jurisdiction. It can be divided only in a separate partition action.

Paula S. Leversee appeals, and Dale E. Leversee cross-appeals, from a judgment of dissolution of marriage. Paula and Dale married on November 25, 1977, and separated December 6, 1978. They had lived together since June 1976.[1] Before the marriage, in July 1977, they acquired a residence, taking title as "DALE E. LEVERSEE AND PAULINE S. LEVERSEE, his wife, as Joint Tenants." The down payment (approximately $24,000) was made from Paula's separate funds. The trial court found that subsequent mortgage payments were made from commingled accounts that the parties had maintained before and during marriage.

During marriage the parties bought an Audi vehicle for $9,000. They traded in (for $2,500) a Mustang which Paula had owned before marriage. Dale testified that before the marriage, but while the parties lived together, he had paid Paula $1,000 to be used as a payment on her car loan for the Mustang. He also testified that in December 1976 he made a $63 payment for renewal of the Mustang's license.

---

[1] Apparently marriage spoiled a beautiful friendship.

The parties met on January 15, 1979, in the office of Paula's attorney. There they had a physical altercation in which Paula bit Dale on the face, ripped his shirt, tore his watch from his wrist, and pulled his tie. Dale testified that she also threatened to obtain a gun from her father and shoot Dale, a woman he was currently seeing, and the woman's child. After the altercation Dale was asked to sign a quitclaim deed of the residence in favor of Paula. He signed it, but testified that he would not have done so under "more calm circumstances."

Paula filed a petition for dissolution of marriage on December 12, 1979. The court in its judgment of dissolution characterized the residence and Audi automobile as community property, gave the residence and car to Paula, and ordered Paula to pay a sum to Dale in order to effect an equal division of the property. The court made a finding that Dale had not freely and voluntarily executed the quitclaim deed.

Paula moved for a new trial. The court denied the motion, but modified its findings and conclusions to state that Paula was entitled to payment of $3,873.66 for loans she made to Dale before marriage. The court modified the judgment accordingly.

■ Paula challenges the court's characterization of the residence as community property and the concomitant order that she pay a sum to Dale to effect a division of the property. She correctly asserts that despite the form of title in which the parties acquired the residence—incorrectly identifying Paula as Dale's wife—the residence was not presumptively community property because it was not acquired during the marriage. "Community property is property acquired by husband and wife, or either, *during marriage,* when not acquired as the separate property of either." (Civ. Code, § 687; italics added.)

The parties' taking of title to the residence as joint tenants prior to marriage raised a presumption of joint tenancy. (Civ. Code, § 683.) That presumption was rebuttable by evidence of an express written or oral agreement between the parties to change the form of ownership to community property. (*Socol* v. *King* (1950) 36 Cal.2d 342, 345 [223 P.2d 627]; *Schindler* v. *Schindler* (1954) 126 Cal.App.2d 597, 604 [272 P.2d 566]; *Jones* v. *Kelley* (1953) 121 Cal.App.2d 130, 134 [262 P.2d 859].) Dale presented no such evidence. His only testimony on this point was that he and Paula took title as husband and wife "just to make the neighbors feel better," and that they allegedly had a discussion to the effect that ownership of the residence "would be held by both of us." The presumption of community property where a residence is acquired during marriage in joint tenancy, as set forth in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614

P.2d 285], and subsequently altered and codified in Civil Code section 4800.1, is inapplicable here, since the parties acquired the residence before marriage. Civil Code section 4800.1, adopted effective January 1, 1984, and applicable to proceedings not yet final as of that date (Stats. 1983, ch. 342, § 4), sets forth a presumption that "property acquired by the parties *during marriage* in joint tenancy form is presumed to be community property." (Italics added.)[2] The statute's inapplicability to property acquired before marriage is indicated by the legislative history of the bill adopting section 4800.1. That bill originally made the statute applicable to joint tenancy property "wherever situated and whenever acquired," but ultimately made the statute applicable only to "property acquired by the parties during marriage in joint tenancy form."[3]

For the same reason the former law as set forth in *Lucas, supra,* was inapplicable. *Lucas* dealt with the similar presumption formerly set forth in Civil Code section 5110 that a single-family residence acquired in joint tenancy "during marriage" was presumed to have been community property.[4]

Thus, since the Leversee's residence was acquired before marriage, did not undergo a title change after marriage and was not shown

---

[2]Civil Code section 4800.1 provides that the title presumption "is a presumption affecting the burden of proof and *may be rebutted by either of the following*: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property." (Italics added.) The statute does not expressly state that the two enumerated methods are the only ways to rebut the presumption. However, a report by the Assembly Committee on Judiciary states, "The presumption could not be rebutted by an alleged oral agreement or an implication from a statement of conduct, but only by a written agreement or evidence of title." (Assem. Com. on Judiciary Rep. on Assem. Bill No. 26 (May 9, 1983) p. 3.) Additionally, the rule of statutory construction *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another) would seem to apply.

[3]In Assembly Bill No. 26, 1983-1984 Regular Session, as originally introduced on December 6, 1982, the first draft of Civil Code section 4800.1 gave courts in dissolution proceedings jurisdiction, "at the request of either party, to divide the interests of the parties in real and personal property, wherever situated and whenever acquired, held by the parties as joint tenants or tenants in common." The bill was amended by the Assembly on February 22, 1983, to make the statute applicable to "real and personal property, wherever situated, title to which is taken during marriage by the parties as joint tenants or tenants in common." This language was again amended in the Assembly on April 4, 1983, to make the statute applicable to "property acquired by the parties during marriage in joint tenancy form . . . ." The latter language was included in the final draft of the bill.

[4]Dale argues that *In re Marriage of Miller* (1982) 133 Cal.App.3d 988 [184 Cal.Rptr. 408], extended *Lucas* to cases in which one spouse contracts while still unmarried to buy property. But while the husband in *Miller* did contract to buy property while still unmarried, both parties took title as joint tenants upon the close of escrow *after* marriage; the court held that the premarital time of contracting was irrelevant. (*Id.,* at pp. 990-992.) Here, the parties took title before marriage.

to be the subject of an agreement to hold it as community property, the trial court erred in characterizing it as community property and lacked jurisdiction under the Family Law Act to divide or affect the parties' interests in it. (See *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793, 803 [141 Cal.Rptr. 59].)

■ Paula also presented evidence that the quitclaim deed in her favor required the court to confirm the residence to her as her separate property. The court found, however, that Dale had not freely and voluntarily executed the quitclaim deed, and Dale's testimony to this effect was sufficient to support this finding. (E.g., *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)[5] ■ Paula argues that the court nevertheless lacked jurisdiction under the Family Law Act to adjudicate the validity of the quitclaim deed. But the court did have such jurisdiction, given the dependence of the characterization of the residence (over which the court had jurisdiction) on the validity of the quitclaim and the parties' actual litigating of the quitclaim's validity. (*Porter* v. *Superior Court, supra,* 73 Cal.App.3d at p. 805.)[6]

■ Because the residence is true joint tenancy property and the court lacked jurisdiction to divide or affect the parties' interests in it, its disposition must be pursued in a separate partition action. (Code Civ. Proc., § 872.010 et seq.) In the partition action the court may order an equitable compensatory adjustment to compensate Paula for her use of separate funds for the down payment on the residence. (Code Civ. Proc., § 872.140.) If the appropriate motion is made and granted the partition action may be consolidated with the present dissolution action on remand. (*Porter* v. *Superior Court, supra,* 73 Cal.App.3d at p. 805.)

We note that in 1982 the California Law Revision Commission recommended to the Legislature that courts in dissolution proceedings be given jurisdiction over joint tenancy and tenancy in common property of spouses,

---

[5]To the extent the court's findings might be said to be ambiguous, it is to be inferred on appeal that the court resolved the factual dispute against Paula. (See Code Civ. Proc., § 634.)

[6]Paula argues that certain accounts in financial institutions were traceable to her separate property, so that the court should not have found that premarital and marital funds were commingled and therefore community property. She apparently asserts this point as a challenge to the court's finding that the parties made house payments from commingled accounts maintained before and during marriage; the court's judgment neither characterized nor effected a division of such accounts. Given the determination that the residence was joint tenancy, rather than community property, this point is irrelevant in this Family Law Act proceeding for dissolution.

at the request of either party, in order to "eliminate litigation over the community or separate character of the property, add flexibility to the formulation of a just property disposition, and avoid the need for a separate partition proceeding for the property." (Recommendation Relating to Division of Joint Tenancy and Tenancy in Common Property at Dissolution of Marriage (Sept. 1982) 16 Cal. Law Revision Com. Rep., pp. 2165, 2170-2171.) This recommendation was followed in the original draft of the bill enacting Civil Code section 4800.1, but did not survive subsequent amendments to the bill. (See fn. 3, *ante.*) The present case demonstrates the wisdom of the Law Revision Commission's recommendation. In the interest of judicial economy and avoiding needless expenditures of legal fees and costs for parties such as the Leversees, the Legislature should again consider the Law Revision Commission's recommendation.

■   Paula also challenges the court's characterization of the Audi vehicle as community property. Because the car was acquired during the marriage it was presumed to be community property. (Civ. Code, § 5110; *In re Marriage of Mix, supra,* 14 Cal.3d at pp. 611-612.) That presumption could have been overcome by tracing (*ibid.*), and Paula argues she showed the source of the down payment for the Audi was her Mustang (plus $600 cash). But Dale presented evidence that the Mustang was not Paula's separate property: he testified that he paid Paula $1,000 to be used as a payment on the Mustang's financing, as well as paying for the Mustang's license renewal in December 1976. This testimony was sufficient to undermine Paula's attempt to trace to a separate property source, and supported the court's finding that the Audi was purchased "with community funds."

■   Dale contends on his cross-appeal that no substantial evidence supported the court's determination, upon modification of its judgment, that Dale was indebted to Paula for loans totalling $3,873.66. This contention lacks merit: the court's determination was supported by a ledger sheet admitted into evidence, showing cash receipts by Dale from Paula on five separate occasions under the heading "Loans & Others."

The judgment is reversed as to its characterization of the residence as community property and to the extent this affects the payment Paula was ordered to pay Dale to effect an equal division of community property. The cause is remanded to the superior court with directions to modify the judgment to exclude a division of the residence, and to determine (considering the value the court found for community assets at the time of trial in 1981) what amount is owing to one of the parties by the other to accomplish an

equal division of community property. Paula shall recover her costs on appeal.

Low, P. J., and Haning, J., concurred.

The petition of appellant Husband for a hearing by the Supreme Court was denied July 25, 1984.