[No. B039767. Second Dist., Div. Seven. Nov. 16, 1990.]

In re the Marriage of ALEXANDRIA and JAMES L. GAGNE.
JAMES L. GAGNE, Appellant, v.
ALEXANDRIA GAGNE COLMAN, Respondent.

**COUNSEL**

Thomas Trent Lewis for Appellant.

Robert M. Cohen for Respondent.

**OPINION**

**JOHNSON, J.**—Appellant, James L. Gagne, appeals from the trial court's judgment of dissolution of marriage. He primarily challenges the family law court's jurisdiction to determine a premarital loan agreement between the spouses entered into before marriage. Because we find the parties voluntarily submitted this issue to the court in the dissolution proceeding, we hold

the family law court had jurisdiction to make all determinations regarding the premarital loan.

## FACTS AND PROCEEDINGS BELOW

On March 6, 1979, petitioner, James Gagne (James) and respondent, Alexandria Gagne Colman (Alexandria) purchased a family residence located at 1433 Roscomare Road, Los Angeles, California. They took title as "James Gagne, an unmarried man, and Alexandria Colman, a married woman, as her separate property as joint tenants." At the time of purchase Alexandria was in the process of dissolving a prior marriage.

James and Alexandria agreed if she loaned James $59,735 from her separate property for the down payment on the family residence, he would repay her, upon demand or upon sale of the house, with annual interest at the rate of 10 percent. Alexandria lent James $59,735 for the down payment on the home.

James and Alexandria married on June 30, 1979. They separated on September 10, 1986.

James filed his petition for dissolution on September 11, 1986. James's petition included as an asset for division the family residence purchased by them prior to marriage.

On October 14, 1986, Alexandria filed her response. Alexandria also listed the family residence on Roscomare Road as an asset subject to division by the court. She also requested the court to confirm to her as her separate property the "assets contributed to purchase" the family residence as well.

On August 29, 1988, judgment was entered as to status only. All other reserved issues were tried on September 14, 15, 16, 19, and 20, 1988.

On September 29, 1988, James requested a statement of decision. James amended this request on September 30, 1988. Notice of entry of judgment, further judgment on reserved issues and statement of decision of the trial court were filed on November 23, 1988.

The trial court's statement of decision, insofar as it is relevant to this appeal, provided:

"2.   With regard to the issue of this Court's jurisdiction to enforce the oral agreement regarding the purchase of the family residence which was

entered into between Petitioner and Respondent prior to their marriage, the Court finds that it has jurisdiction to adjudicate the issue of this property and all agreements made in conjunction with the purchase of the property, in this proceeding.

"a. The Court based its decision on the following facts: The property was acquired by Petitioner and Respondent in joint tenancy form on March 6, 1979, prior to the parties' marriage. Respondent testified that she and Petitioner entered into an agreement prior to the purchase of the family residence located at 1433 Roscomare road, Los Angeles, California. Respondent testified that pursuant to the agreement, she was to lend, and did lend Petitioner $59,735.00 for the purchase of the family residence and Petitioner would repay her, upon demand, or upon the sale of the house, $59,735.00 with interest at the rate of ten percent. Respondent's witnesses, Patricia Marek and Dorothy Marek, confirmed said agreement. Respondent's witness, Marvin Gross, Esq. also confirmed said agreement except that he could not recall what the provision of the agreement was regarding interest. Marvin Gross, Esq. testified that petitioner and respondent had recited the agreement to him in his office. Petitioner, on the other hand, was unable to remember the exact terms of the agreement and testified to different variations of the agreement. Additionally, petitioner testified that he had never discussed said agreements with Patricia Marek, Dorothy Marek and Marvin Gross, Esq. In fact, petitioner testified that he had never seen Marvin Gross, Esq. before in his life. The court finds the testimony of petitioner not to be credible.

"b. The legal basis for the Court's decision is that pursuant to Civil Code Section 4800.4, the Court has jurisdiction, at the request of either party, to divide real property whenever acquired, held by the parties as joint tenants. Pursuant to this section, the property shall be divided in accordance with the same procedure for and limitations on the division of community property. Additionally, as set forth in the case of *In Re Marriage of Frick* (1986) 181 Cal.App.3d 997, 226 Cal.Rptr. 766, the Court may order Petitioner to repay Respondent for a loan made prior by Respondent to Petitioner prior to the marriage."

On December 8, 1988, James filed a motion for a new trial and to vacate the judgment, challenging the family law court's jurisdiction to adjudicate agreements between the parties prior to marriage. On January 17, 1989, the court denied James's motion for a new trial.

This appeal followed.

## DISCUSSION

### I. CIVIL CODE SECTION 4800.41[1] AUTHORIZES A FAMILY LAW COURT TO DIVIDE JOINTLY HELD SEPARATE PROPERTY AT THE REQUEST OF A PARTY, PURSUANT TO THE AGREEMENT OF THE PARTIES.

Initially we recognize neither party contests a family law court's authority to divide the jointly owned family residence under Civil Code section 4800.4.[2] Both parties requested the court to assume jurisdiction over the joint tenancy property they purchased prior to marriage. Nor does James challenge the substantiality of the evidence finding Alexandria loaned him $59,735 at 10 percent interest for the down payment on the family residence. James just claims the finding was made by the wrong court.

■ Alexandria contends the loan is inextricably linked to the house itself and is therefore properly before the family law court for it to determine all issues regarding the loan agreement before affecting the division of the property.

James argues any agreement or understanding concerning the premarital loan is separate and apart from the family residence itself. Thus, because it is a premarital claim, the family law court has no jurisdiction and the matter can only properly be determined in a separate civil proceeding.

We reject as a matter of logic and common sense James's claim that the loan, used as the down payment for the purchase of the property, is unrelated to the parties' rights or interests in that property. James's argument, essentially, is that a family law court's authority under section 4800.4 is to mindlessly acknowledge the state of the title and divide the parties' interests accordingly. James contends the court may not inquire as to the extent of each party's interest nor how they acquired such interest before simply dividing the property.

This argument ignores the intended purpose and function of section 4800.4. The Legislative Committee Comments (West's Ann. Civ. Code,

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] Civil Code Section 4800.4 provides:

"(a) In a proceeding for division of the community property and the quasi-community property, the court has jurisdiction, at the request of either party, to divide the separate property interests of the parties in real and personal property, wherever situated and whenever acquired, held by the parties as joint tenants or tenants in common. The property shall be divided together with, and in accordance with the same procedure for and limitations on, division of community property and quasi-community property.

"(b) This section applies to proceedings commenced on or after January 1, 1986, regardless of whether the property was acquired before, on, or after January 1, 1986."

§ 4800.4 (1990 pocket supp.)) examine the scope and purpose of this provision expanding the jurisdiction of family law courts:

"Section 4800.4 reverses the rule that the court in a dissolution or separation proceeding has no jurisdiction over property of the parties other than community or quasi-community property. [Citations.] Section 4800.4 supplements provisions governing community property held in joint tenancy form by extending the jurisdiction of the court to separate property held in joint tenancy form as well. It is consistent with the general rule that the court has jurisdiction to settle the property rights of the parties and with the principle that the court has jurisdiction to settle matters submitted to it by the parties. Section 4351 (jurisdiction of court); see, e.g., Allen v. Allen, 159 Cal.197, 113 P. 160 (1911). . . .

"Subdivision (a) supplements Section 4800 by giving the court express jurisdiction over joint tenancy or tenancy in common separate property submitted by a party in a property division proceeding under the Family Law Act. Property subject to division includes property acquired by the parties either before or during marriage. . . . The jurisdiction of the court extends only to the interests of the spouses, whether equal or unequal, and the court may not affect interests of third parties in the property. ·. . . .

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"It should be noted that division of property pursuant to this section is subject to the same limitations applicable to division of community property. Therefore, an express agreement of the parties precluding partition or other division of the property and providing a mechanism for dispute resolution *or otherwise governing their rights in the property* prevails over this section. See section 4800 (division of community property 'except upon written agreement of the parties'). [18 Cal.L.Rev. Comm. Reports 147 (1984); 18 Cal.L.Rev.Comm. Reports 365 (1986)]." (Italics added.)

As the comments point out, an express agreement between the parties governing their rights in the property controls in the division of that property. Therefore, it was not error for the trial court to inquire as to the existence or nonexistence of any agreement the parties had in connection with the property in order to effectuate a division in accord with the parties' agreement.

One commentator has interpreted this legislative comment as follows: "This provision was *not* intended to give the parties a 50-50 share in each other's joint tenancy or tenancy in common interests or otherwise to 'redistribute' their interests in such commonly owned property: i.e., the last sentence of § 4800.4 does *not* mean that the 'equal division' rule for *community property* applies to the division of true joint tenancy or tenancy in

common property in [Family Law Act] proceedings. The court is simply empowered (at the request of either party) to *effect* the division of their undivided interests in such property in connection with the [Family Law Act] property division proceeding." (Hogoboom & King, Cal. Practice Guide: Family Law 1, (Rutter 1990) § 8:199.10.) (Italics in original.)

If a family law court is empowered to divide the parties' interest, it appears axiomatic it must first inquire into and decide the precise extent of each party's interest. It would be inconsistent for the Legislature to expand a family law court's jurisdiction and then force it to exercise such new authority with a blindfold on. This cannot be the proper interpretation of the grant of authority in section 4800.4.

Additionally, it would make no sense to suspend proceedings dividing the family residence while another superior court determined the existence and terms of the loan for the acquisition of the property. This would be a complete waste of judicial resources, and taxpayers' as well as the litigants' money.[3]

---

[3] It would create untold new problems if a family law court were strictly limited to division of property under section 4800.4 without authority to inquire into the facts, circumstances and equities surrounding the property. This case is a perfect example. James requested the family law court to assume jurisdiction over the jointly owned family residence under 4800.4 with a further request the court order its sale. When the issue of Alexandria's premarital loan for the purchase of the property came up in testimony, this exchange took place:

"MR. GLUSMAN (James' attorney): It's our legal position that that matter is not within the purview of the jurisdiction of this court in these proceedings.

"THE COURT: Well, Mr. Glusman, I have to respectfully disagree with you in that if this court has to make some kind of an order involving the property, it is going to have to consider what went before.

"MR. GLUSMAN: It's our position, Your Honor, with great respect, that the court's order re[garding] this property could be ordered [sic] to sell it.

"THE COURT: I appreciate that.

"MR. GLUSMAN: Because under 4800.4, you would have the power to make such orders. However, I don't believe that this court in these proceedings has the power to make a determination, other than the fact that at the time of the marriage the parties were possessed of a house in joint tenancy, a title which was acquired while they were unmarried persons, and I don't believe the court can go further than that.

"THE COURT: Mr. Glusman, if I make an order to sell, I am going to have to make some kind of an order relative to the disposition of the proceeds.

"MR. GLUSMAN: That's right, Your Honor.

"THE COURT: And if I have to make an order relative to the disposition of the proceeds, I have to take into consideration what kind of a contribution the community made, if any, in the nature of the property. [¶] I don't see how I can avoid doing that.

"MR. GLUSMAN: Your Honor, it is our position that the court may divide the property, but that it may not in these proceedings settle any litigation which might occur between the parties as to 'you owe me' or 'I owe you' for a loan or anything else that happened while they were unmarried parties.

"THE COURT: Perhaps I am being premature, but I have no intention of leaving the situation hanging, so that all the parties can look forward to is another lawsuit."

Avoiding needless expenditures of time and money was one of the primary considerations that prompted enactment of section 4800.4. (See, e.g., *In re Marriage of Leversee* (1984) 156 Cal.App.3d 891 [203 Cal.Rptr. 481; *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793 [141 Cal.Rptr. 59].)

It would be incongruous for us to now destroy the advances made through the enactment of section 4800.4 and order a separate civil proceeding for what the family law court is clearly empowered to and capable of adjudicating. This we decline to do.

## II. THE TRIAL COURT DID NOT ERR IN DECIDING THE ISSUE OF ALEXANDRIA'S PREMARITAL LOAN BECAUSE BOTH PARTIES VOLUNTARILY SUBMITTED TO THE JURISDICTION OF THE FAMILY LAW COURT THROUGH PLEADINGS WHICH RAISED THE ISSUE.

To reiterate, James does not contest the family law court's authority to *divide* the jointly held family residence. Rather he disputes the court's authority to inquire into any of the facts or circumstances surrounding the acquisition of that property. James insists the issue of whether or not an agreement existed with regard to the jointly held property can only be heard in a civil proceeding separate and apart from the proceedings in family law court.

Although not critical to a determination of the case at bar, case law provides an independent and sufficient rationale to warrant a finding a family law court can properly adjudicate the terms and existence of premarital loans, even when the loan is otherwise unrelated to any other property being divided in the dissolution proceeding.

In *In re Marriage of Leversee, supra*, 156 Cal.App.3d 891, the husband challenged the trial court's finding the wife was entitled to payment of $3,873.66 for loans she made to him before marriage. The appellate court affirmed, finding substantial evidence in the record to support the existence and amount of the premarital loans.

There was no discussion of the propriety or impropriety of the family law court's exercise of jurisdiction over the premarital loans, which may either have been obvious to the parties or stipulated to by them.

Later, the California Supreme Court reviewed a family law court's authority to confirm premarital loans between spouses which were incurred for reasons other than the acquisition of property then before the court for division. In *In re Marriage of Saslow* (1985) 40 Cal.3d 848 [221 Cal.Rptr. 546, 710 P.2d 346], the wife had lent the husband various small sums of money while the parties were dating. The court stated: "Normally, the jurisdiction of the trial court in a dissolution proceeding is limited to divi-

sion of community property. [Citation.] It does not extend to the resolution of disputes regarding transactions which occurred before the marriage. However, since both parties have apparently ' " 'voluntarily submitted the matter to a court having general jurisdiction to pass upon the question under pleadings which properly raise[] [the] issue' " ' [citation], it was permissible for the trial court to render judgment on the issue." (*Id*. at pp. 865-866.)

In 1986, this court acknowledged the family law court's authority to adjudicate questions of premarital loans as between the spouses in a dissolution proceeding in *In re Marriage of Frick* (1986) 181 Cal.App.3d 997 [226 Cal.Rptr. 766]. In that case, the wife's premarital loans were allegedly made as investments in the husband's separate property business, an asset submitted for assessment in the dissolution hearing. There was substantial evidence in the record the wife did not intend the money as an investment in the husband's separate business. In lending the money the wife wrote the word "loan" across the top of the checks to her husband, making it clear she did not intend a gift nor intend a contribution to the eventual purchase of the family home. We affirmed the trial court's ruling ordering the husband to repay the $10,000 the wife loaned him prior to marriage.

Both Alexandria and James contend the *Saslow* decision is supportive of their respective positions.

Alexandria claims the opinion acknowledges and reconfirms the plenary subject matter jurisdiction of family law superior courts. That, as a result, it cannot be said as a matter of law a family law court is without jurisdiction to determine the terms of a premarital loan. Alexandria further claims James voluntarily submitted the matter to the family law court by listing the family residence as an asset to be divided in his petition, and by never objecting to, or making a motion to strike, Alexandria's request in her response for the court to confirm as her separate property "assets contributed to purchase" the family residence.

James, however, contends he never put the premarital loan or agreement in issue and objected to any testimony regarding those subjects as violative of rule 1212 of the California Rules of Court, Family Law Rules.[4] He claims only Alexandria submitted the matter to the jurisdiction of the family law court and her unilateral acts are legally insufficient under *Saslow* for the family law court to properly resolve the issue of the premarital loan.

We believe James's argument must fail. On October 14, 1986, when Alexandria filed her response, James became aware Alexandria wanted the

---

[4] Rule 1212 provides: "Neither party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules or the Family Law Act."

issue of her premarital loan resolved in the dissolution hearing. Almost two years elapsed before the case came to trial, and James never objected by filing a motion to sever or by filing a motion to strike under the California Rules of Court, rule 1229, Family Law Rules.[5]

Thus, the trial court could properly find the pleadings raised the issue of the premarital loan and that both parties "apparently voluntarily submitted the matter" for its decision. Not until James's attorney made his first objection to testimony at trial did the court become aware James wanted to reserve the issue of the loan agreement for a separate civil trial.

■ ■ ■ ■ That a family law court is authorized to determine premarital issues submitted to it by the parties is further supported by the current practice of joining non-family law matters in the dissolution proceeding. (See Super. Ct. L.A. County Manual of Proc. for Family Law Dept. (Central Dist.) § XIII B., p. 19, ["Consolidation of Civil Actions. [¶] In the Central District, a Civil Action (including Probate, Guardianships, Personal Injury, Marvin Actions, and Contracts) may be consolidated with Family Law matters. . . ."]; *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57 [191 Cal.Rptr. 545] ["Marvin" contract consolidated with dissolution action]; *Watkins* v. *Watkins* (1983) 143 Cal.App.3d 651 [192 Cal.Rptr. 54] ["Marvin" contract consolidated with dissolution action].)[6]

■ That there is express authorization in the Family Law Act to adjudicate the character (as community or separate), amount and existence of premarital debts is further evidence of the propriety of the family law court to adjudicate premarital loans which are related to an asset before it

---

[5] Rule 1229 provides in pertinent part: "(a) Neither the petition or the response shall contain any matter not specifically required. At the request of either party, upon noticed motion, or on the court's own motion, any matter not so required may by stricken by the court or otherwise disregarded by it."

[6] James tries to analogize their premarital loan agreement to a "Marvin" contract to which the Family Law Act is inapplicable.

"Marvin" is a reference to the *Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106] decision in which the California Supreme Court held express or implied contracts between unmarried cohabitants to share in property accumulations during the relationship enforceable under general principles of contract law. Parties seeking to enforce a "Marvin" contract can only do so in a regular civil proceeding because, by definition, the Family Law Act does not apply to unmarried persons.

But, as explained above, when a "Marvin" action is filed together with a dissolution action, the two may be properly consolidated in the dissolution proceeding. (See also, Hogoboom & King, Cal. Practice Guide: Family Law 1, 2 (Rutter 1990), §§ 3.105.2, 20.11; Adams & Sevitch, Cal. Family Law Practice (7th ed. 1987), § H.76.1; 11 Witkin, Summary of Cal. Law, Community Property (9th ed. 1990), § 240, p. 665.)

But an agreement to reimburse a loan is simply not the equivalent of a typical "Marvin" contract between nonspouses agreeing to share in each other's property accumulations, however and whenever acquired, during the course of the relationship.

James's reliance on *Marvin* is misplaced.

for division. Section 4800, subdivision (c) authorizes the family law court to confirm the separate debts of the parties, whether incurred before or during marriage (§ 4800 subd. (c) (1), ["Debts incurred by either spouse before the date of marriage shall be confirmed without offset to the spouse who incurred the debt."].) Surely the court is authorized to inquire into the possibility of such debts and to inquire as to whom the separate debts, if any, should be assigned. (See also California Rules of Court, Family Law Rules, rule 1242: "The court in every case shall ascertain the nature and extent of all assets and obligations subject to disposition by the court in the proceeding and shall divide such assets and obligations as provided in the Family Law Act, except upon the written agreement of the parties or an oral stipulation of the parties made in open court. The court may require that any such agreement be submitted to verify that there is no property subject to disposition by the court.")

Courts have long recognized the importance of simplifying and expediting court proceedings in family law matters. (*Mergenthaler* v. *Mergenthaler* (1945) 69 Cal.App.2d 525, 528 [160 P.2d 121] ["It was proper upon a dissolution of the marriage for the court to determine all issues arising as a result of that relation. It is a principle of chancery that a court of equity will *if possible dispose of all issues between the litigants in one judgment in order to preclude further litigation.*"]; *Porter* v. *Superior Court, supra,* 73 Cal.App.3d 793, 802-803 ["A suit for divorce under our system has been *held to be a suit in equity. . . .* Is there any principle of equity which favors litigation by piecemeal? In the majority of cases, if affirmative relief can be granted to the defendant at all, it can be granted upon the evidence introduced upon the issues raised upon the complaint, or at all events such evidence is pertinent and material upon the cross-demand. In such cases, what useful purpose would be subserved by compelling the defendant to face the expense and delay of another suit in which substantially the same evidence is to be introduced?"]; *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260 [255 Cal.Rptr. 488] [family law court has jurisdiction to order a spouse who willfully destroys the other's separate property to make reimbursement from his own share of the community property].)

Because the pleadings properly put the matter in issue, and because James waived any objection he may have had by failing to object timely, the family law court was within its authority to decide the terms and existence of the loan agreement.[7]

---

[7] At oral argument, appellant cited the recently decided case of *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478 [273 Cal.Rptr. 696], for the proposition family law courts may properly join in the dissolution proceeding a separately filed civil lawsuit between the parties.

## III.  CIVIL CODE SECTION 4800.4 IS NOT UNCONSTITUTIONAL AS APPLIED TO JAMES.

■  James also asserts if the family law court is found to have jurisdiction to adjudicate premarital agreements under section 4800.4 he will be deprived of the right to a jury trial.

■  The right to a jury trial is not absolute. "The right so guaranteed by the Constitution is that of the right as it existed at common law or in those cases triable by a jury as a matter of right under the common law." (*Porter* v. *Superior Court, supra,* 73 Cal.App.3d 793, 800.) In a dissolution proceeding there is no right to a jury trial. (*Cassidy* v. *Sullivan* (1883) 64 Cal. 266 [28 P. 234]; *McLachlan* v. *McLachlan* (1929) 101 Cal.App. 106 [281 P. 512]; *Porter* v. *Superior Court, supra,* 73 Cal.App.3d at p. 798.)

■  Thus, this argument could have merit in a situation in which a party immediately objected to the other party's request for the family law court to take jurisdiction under section 4800.4, e.g., by filing the proper motions and objections and request for a jury trial of the issue. Where the complaining party's petition or response excluded any property subject to the premarital agreement, and where the court denied all motions to sever, strike or transfer the premarital issue to another civil court, a party may have a legitimate claim for relief.

This, however, is not the situation in this case. As stated above, James himself invoked the jurisdiction of the family law court under section 4800.4 by including the family residence, subject to the premarital agreement, in his list of assets in his petition. Although not dispositive of the issue, James never requested, indeed, never even indicated a desire for, a jury trial until he filed his brief on appeal. Under the circumstances, James has waived whatever right he may have had to a jury trial of the premarital agreement issue by voluntarily submitting to the jurisdiction of the family law court.

James further argues "retroactive" application of section 4800.4 is unconstitutional as it denies him the right to a jury trial which is a violation of due process. James relies on the decisions in *In re Marriage of Buol* (1985) 39

Leave of the court was granted to submit letter briefs on any issue raised in the *Weaver* decision that could have a bearing on the disposition of this appeal.

In *Weaver*, the husband filed a civil action for declaratory relief and quiet title as to real property owned by the wife as her separate property. Two months later, the wife filed a petition for dissolution and the lawsuits were consolidated in the family law proceeding.

The issue on appeal was the standard of proof required to prove a pre-1985 oral transmutation of property between spouses. The *Weaver* decision sheds no light on the question presented in this appeal, which is whether a family law court may properly exercise jurisdiction over premarital loan agreements, and as such is inapposite.

Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354], and *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253] in which the California Supreme Court held retroactive application of sections 4800.1 and 4800.2 respectively unconstitutional as they operated to alter the legal effect of prior transactions.

James's argument is without merit. Section 4800.4 does nothing to change vested legal rights of the parties. It is merely an optional jurisdictional provision which the parties can entirely avoid or voluntarily invoke as they wish. Additionally, this section was intended to operate only prospectively, i.e., only parties to a dissolution proceeding commenced after January 1, 1986, could choose to invoke this jurisdiction expanding section. Hence, James's reliance on *In re Marriage of Buol* and *In re Marriage of Fabian* is unfounded.

## DISPOSITION

We find the family law court had jurisdiction to adjudicate the issue of the premarital loan agreement and affirm the judgment below. Respondent is to recover her costs of this appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 1991.