[No. A034506. First Dist., Div. Three. Oct. 23, 1987.]

C. M. KING et al., Plaintiffs and Appellants, v.
OAKMORE HOMES ASSOCIATION, Defendant and Respondent.

COUNSEL

Stark, Wells, Rahl, Field & Schwartz, Stark, Stewart, Wells & Robinson, John F. Wells and Ned Robinson for Plaintiffs and Appellants.

Belzer, Jackl, Katzen, Hulchiy, Murray & Balamuth and V. James Jackl for Defendant and Respondent.

OPINION

WHITE, P. J.—Appellants, C. M. King and A. M. Cadigan, with their respective husbands, own 2 of the 443 lots at Oakmore Highlands in Oakland. Respondent Oakmore Homes Association is a nonprofit corporation whose members consist of the developer and those who own lots at Oakmore Highlands. Appellants filed a complaint for declaratory relief against respondent contesting the validity of two votes of respondent's members which extended the period during which restrictions on members' property were to remain in effect. The trial court found that the extensions at issue in this appeal were valid.[1] We reverse the judgment.

The parties stipulated to the following facts. The properties were subject to a "Declaration of Restrictions," recorded originally on May 17, 1926, and extended through December 31, 1979. The Declaration of Restrictions provided that it could be extended for periods not exceeding 20 years "by the assent, evidenced by appropriate agreement entitled to record, entered into by the owners of record of not less than sixty-five (65) per cent in area of said property, . . . ."

On December 28, 1979, respondent's Board of Directors recorded a resolution certifying that not less than 65 percent of the owners agreed to a one-year renewal of the Declaration of Restrictions. Of those voting to extend, all owners of 138 of the lots signed the agreement; one or more but not all owners of 181 lots signed the agreement; as to 2 other lots, one owner, separated or divorced from the other owner, signed, and the nonresident spouse did not sign.

A resolution recorded on December 31, 1980, extended the Declaration of Restrictions for an additional twenty years. Of those voting to extend, all owners of 287 lots signed the agreement; one or more but not all owners of

---

[1] The trial court found a third vote to be invalid, and this finding is not raised as an issue on appeal.

14 lots signed the agreement; as to 9 lots, one owner, separated or divorced from the other owner, signed, and the nonresident spouse did not sign.

■ Appellants contend that the extensions were invalid because they failed to achieve the necessary 65 percent of all of the members' vote. The contention is based on the many nonvoting members who were either joint tenants or tenants-in-common with voting members. Their position is that under respondent's bylaws, the votes of the owners of a particular lot could not be applied toward fulfilling the 65 percent requirement where the votes of the cotenants of such owners were not reported.

The issue is whether a cotenant's vote may bind a nonvoting cotenant. While the legal principles controlling the relations of cotenants would ordinarily govern, there is a specific provision in respondent's bylaws concerning voting among cotenants. We base our decision on the interpretation of this bylaw, and find our interpretation to be consistent with the principles of cotenancy. The bylaw provides: "When a building site is owned of record in joint tenancy or tenancy-in-common, the membership as to such building site shall be joint, and the rights of such membership (including the voting power arising therefrom) shall be exercised only by the joint action of all owners of such building site."

■ The key phrase of the bylaw is "joint action." The most reasonable interpretation of the joint action requirement is that for a vote to be valid, it must reflect the joint action of all cotenants of the property, and joint action means that each and every lot owner's position must be reflected, either by that person's actual vote or by authorization of a cotenant to vote as his or her representative. If there is division among the cotenants, the vote is not valid. If there are nonvoting cotenants, the voting cotenant's vote should count as one full vote so long as the nonvoting cotenant authorized such vote on his or her behalf; if the nonvoting cotenant has not so authorized such vote, the voting cotenant's vote does not reflect "joint action of all owners," and should not be considered a valid vote under the bylaw.[2]

---

[2] Condominium and Planned Development Practice (Cont.Ed.Bar 1984) Project Documents, section 6.108, page 453 (hereinafter cited as CEB), contains a sample provision on voting of jointly owned lots which provides that "If one Owner casts the vote attributed to a [Condominium/Lot], the vote shall conclusively bind all the Owners of that [Condominium/Lot]." While the bylaws of other housing subdivisions may contain such a clause, the instant bylaw contained no such provision, and we cannot infer one based solely on the joint action requirement.

We note that the CEB sample bylaw also precludes votes cast on a fractional basis and provides that if all the owners cannot agree, the vote shall be forfeited. The authors also comment that "the clause could provide that the vote attributed to a condominium or lot may be cast in accordance with the desires of a majority of the owners of that condominium or lot." (*Ibid.*)

■ In this case, there was no evidence that cotenants who cast votes were acting jointly with their nonvoting cotenants. The record contains only a stipulation as to the numerical vote count and sheets containing the signatures of the members who voted. Without proof that the votes satisfied the joint action requirement, we cannot find that respondent properly certified that the votes in question received the requisite percentage of votes necessary to extend the Declaration of Restrictions. We cannot infer that joint action existed merely from the presence of a single cotenant's signature. Indeed, that all owners of a large proportion of the lots signed the signature sheets may indicate a general recognition that joint action, as evidenced by the signatures of all cotenants, was required.

Placing the burden on respondent to prove joint action is justified because it is respondent who inserted the joint action requirement in its bylaws. In addition, the joint action requirement serves to protect the property rights of cotenants and the community property of spouses, as expressed in Civil Code section 5127: "[E]ither spouse has the management and control of the community real property, . . . but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is . . . encumbered; . . ."

■ Our holding is consistent with the laws relating to cotenancy, in particular, case law which has "consistently held that one joint tenant has not by reason of the relationship any authority to bind his cotenant with respect to the latter's interest in the common property." (*Carbine* v. *Meyer* (1954) 126 Cal.App.2d 386, 393 [272 P.2d 849]; see also *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113]; *Oberwise* v. *Poulos* (1932) 124 Cal.App. 247, 251 [12 P.2d 156].) "One cotenant cannot, without special authority from the other cotenants, encumber the entire estate, and any deed of trust, mortgage or other encumbrance given by only one cotenant affects only his interest in the property." (2 Miller & Starr, Cal. Real Estate (rev. 1977) § 13:8, p. 453; 16 Cal.Jur.3d (rev.) pt. 1, § 24, pp. 213-214.) Thus, absent the cotentant's consent, a tenant may not create an easement in the common estate against his cotenant, settle a claim for damages to the common property, contract with third persons concerning the common property (16 Cal.Jur.3d, *supra,* at pp. 213-214), or confer jurisdiction to another body to burden the property. (*Los Angeles L. Co.* v. *Los Angeles* (1895) 106 Cal. 156, 159-160 [39 P. 535].)

■ Respondent cites an exception to this rule when the tenant acts for the benefit of the property. (*Gordon* v. *City Council* (1961) 188 Cal.App.2d 680, 687 [10 Cal.Rptr. 776]; see also *Los Angeles L. Co.* v. *Los Angeles, supra,* 106 Cal. at p. 160 ["One cotenant can at any time protect the entire estate from injury or loss without calling to his aid the assistance of the

other cotenants, and his act will inure to their benefit. He can resist an intruder, or evict a trespasser, remove an encumbrance, or redeem from a burden, and since his acts in this behalf are in the interest of and for the benefit of his cotenants, their authority therefor, if necessary, will be presumed."].) We do not believe, however, that this exception applies here because the exception contemplates action that wholly benefits the property, whereas the Declaration of Restrictions, being an equitable servitude, constitutes both a benefit to and a burden on the property. (*Mackinder* v. *OSCA Development Co.* (1984) 151 Cal.App.3d 728, 735 [198 Cal.Rptr. 864].) We find the general rule limiting a cotenant's power to encumber property without the cotenant's consent applicable here.

Respondent contends that because it is incorporated, this case is controlled by Corporations Code section 704. This section concerns the manner in which votes of corporate shares are tabulated, and provides: "If shares stand of record in the names of two or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, . . . unless the secretary of the corporation is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect: [¶] (1) If only one votes, such act binds all; [¶] (2) If more than one vote, the act of the majority so voting binds all; . . ." [3]

Appellants' objections to interpreting the statute as controlling are well taken. First, the votes at issue did not involve votes of shares. Second, the bylaw should control questions of voting by cotenants because it constitutes "written notice to the contrary" to the secretary. Certainly the secretary had notice of the bylaws, as his duties included "serv[ing] all notices required either by law or the By-Laws of the corporation, . . ." For these reasons the bylaw controls over Corporations Code section 704.[4]

Finally, respondent argues that appellants have the burden of proof based on Corporations Code section 7215 which states that any resolution adopted by the board of directors is "prima facie evidence of the adoption of such . . . resolution . . . and of the matters stated therein." This argument fails because the issue here is the validity of the votes underlying the resolutions. A presumption regarding the resolutions is not relevant to this question.

---

[3] This law, with some modifications, was made applicable to nonprofit corporations on January 1, 1980. (Corp. Code, § 7612.)

[4] Corporations Code section 7612, which was in effect at the time of the 1980 vote of respondent's members, speaks in terms of joint "membership" whereas Corporations Code section 704 speaks of a vote of joint "shares." This difference in language does not alter the outcome of this case because under either statute, the bylaw constituted "written notice to the contrary."

The judgment is reversed. Appellants are awarded costs.

Scott, J., and Merrill, J., concurred.

A petition for a rehearing was denied November 19, 1987, and respondent's petition for review by the Supreme Court was denied January 6, 1988.