[No. B155292. Second Dist., Div. Six. Dec. 16, 2002.]

HILARY DABNEY, Plaintiff and Appellant, v.
MARY CATHERINE DABNEY, as Trustee, etc., Defendant and
Respondent.

**COUNSEL**

Richard I. Wideman for Plaintiff and Appellant.

Griffith & Thornburgh, John R. Rydell II and John C. Eck for Defendant and Respondent.

**OPINION**

**GILBERT, P. J.**—However reasonable a court's decision may seem, it must be based on a cause of action. Absent this essential ingredient the court lacks jurisdiction to act.

Here we conclude the probate court erred in ordering a cotenant who is also a trust beneficiary to execute documents for a lot line adjustment. The

court's order bears out Professor Witkin's observation that "the Probate Code is a fertile field for the discovery of jurisdictional limitations." (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 314, p. 888.) We affirm other portions of the court's order.

FACTS

Sam Dabney owned a family home at 940 Andante Road in Santa Barbara. He also owned a studio home on neighboring property at 940.5 Andante. During his lifetime, he transferred a 14.59 percent interest in the studio home to his daughter, Hilary Dabney.[1]

Sam directed that on his death his property be divided into a marital trust and a bypass trust. Sam's widow, Mary Catherine, is the life beneficiary and their daughter, Hilary, is the residual beneficiary of the marital trust. Hilary is the life beneficiary of the bypass trust and her issue is the residual beneficiary. Mary Catherine was named trustee of both trusts.

Mary Catherine allocated the family home to the marital trust, and the 85.41 percent of the studio home not held directly by Hilary to the bypass trust.

Unfortunately, all did not go well between mother and daughter. A principal point of contention involved the valuation Mary Catherine assigned to the studio home. Hilary believed it should be less because, among other defects, the family home encroached onto the studio home's lot.

Hilary filed a complaint for an equitable division of the trust estate and to remove Mary Catherine as the trustee. The court determined that the estate had been properly divided but that Mary Catherine should be removed as trustee because of the friction between the parties.

In August of 2001 Hilary filed a motion to appoint Montecito Bank and Trust as successor trustee and to compel a trust accounting for the year 2000. Mary Catherine requested that, prior to the appointment of a new trustee, the court order Hilary to execute documents for a lot line adjustment. The lot line adjustment would remove the encroachment of the family home from the studio home's lot.

After a hearing, the court appointed Montecito Bank and Trust as successor trustee. It ordered that the successor trustee accept the two trusts as

---

[1]Hereafter we refer to the parties by their first names, not from disrespect, but to ease the reader's task.

funded by Mary Catherine. It further ordered Hilary to execute documents for the lot line adjustment. It ordered Mary Catherine to prepare an accounting for the year 2000 by October 5, 2001, but denied Hilary's request for sanctions.

## DISCUSSION

### I

Hilary contends the trial court erred in ordering her to execute documents for a lot line adjustment. Her contention is based on the theory that her 14.59 percent interest in the studio home makes her a cotenant with the trust. She argues the court has no authority to order a cotenant to execute documents for a lot line adjustment.

All cotenants have an equal right to possession of the whole property. (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 264, pp. 465-466.) It follows that one cotenant has no right, absent an action for partition, to force another cotenant to change the boundaries of the possessory interest. (See also *In re Marriage of Leversee* (1984) 156 Cal.App.3d 891, 894, 897 [203 Cal.Rptr. 481] [court in a dissolution action has no jurisdiction over property held as "true joint tenancy property"; such property can be divided only in a separate partition action].)

Mary Catherine's reliance on *King v. Oakmore Homes Assn.* (1987) 195 Cal.App.3d 779 783-784 [241 Cal.Rptr. 140], is misplaced. There the court discussed an exception to the general rule that one cotenant has no authority to bind another cotenant concerning the common property. That exception arises where one cotenant acts to protect the entire estate from loss and his act will inure to the benefit of the other cotenant. Thus, a cotenant may resist an intruder, evict a trespasser, remove an encumbrance or redeem from a burden. Under such circumstances, where the cotenant is acting against third parties, the cotenant's authority to act on behalf of other cotenants is presumed. The exception does not apply here where a cotenant is acting against the possessory interest of another cotenant. Such unilateral action violates the principle that all cotenants have equal right to possession of the property.

Mary Catherine argues that the probate court had fundamental jurisdiction to decide the matter. She cites Probate Code section 17000 for the proposition that a court with jurisdiction over a trust matter has concurrent jurisdiction over "[o]ther actions and proceedings involving trustees and third persons." She also relies on Probate Code section 17001 for the proposition

that the court in which trust proceedings are pending has all the powers of the superior court.

Fundamental or "subject matter" jurisdiction relates to the inherent authority of the court to decide the case or matter before it. (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087 [56 Cal.Rptr.2d 386].) But no court has inherent authority to decide a matter for which there is no legally recognized cause of action. The Probate Code sections that Mary Catherine relies on assume some sort of cause of action is alleged. But Mary Catherine suggests no cause of action in law or equity that authorizes a court to order Hilary to execute documents for a lot line adjustment. Mary Catherine simply asked the court to make such an order and it complied. There is nothing in Hilary's motion for a substitution of trustees that gives the court the power to order a lot line adjustment. The court has no fundamental jurisdiction to order someone to transfer an interest in her land simply because it seems like a good idea under the circumstances. The only way to compel Hilary to dispose of her interest is by way of a partition action. (*In re Marriage of Leversee, supra,* 156 Cal.App.3d 891.)

Because a party cannot waive the lack of fundamental jurisdiction, we must reverse. (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 12, pp. 556-558.)

Similarly, Mary Catherine's argument that Hilary is barred by waiver and estoppel from raising any defect in notice is unavailing. Proper notice would not make the trial court's order any less erroneous.

Mary Catherine argues that Hilary has suffered no harm as a result of the trial court's order. She claims the lot line adjustment is necessary to make both parcels marketable and that the reconfiguration will not change the amount of acreage in each parcel. Mary Catherine believes that because the adjustment will increase the value of Hilary's interest, the trial court's order is not prejudicial and should not be reversed. (Citing Code Civ. Proc., § 475.)

Whether Hilary will benefit financially from a lot line adjustment is irrelevant. The question is whether an error so substantially affected her rights and obligations as to require reversal. (*Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 635 [30 Cal.Rptr. 391].) The analysis involves the application of legal rather than economic principles. We cannot uphold an erroneous order requiring a party to transfer land simply because it reflects good business judgment.

## II

Hilary contends other orders of the trial court are also in error.

Hilary argues that the trial court should have sanctioned Mary Catherine for failure to provide timely trust accountings for the year 2000. But Hilary cites no authority for the proposition that the court was required to impose a sanction. ▮ We need not consider an argument for which no authority is furnished. (*Horowitz v. Noble* (1978) 79 Cal.App.3d 120, 139 [144 Cal.Rptr. 710].)

Hilary argues the trial court erred in ruling that the successor trustee must accept the trusts as funded and could not reallocate the assets. Hilary claims the ruling was error because the allocation considered the lot line adjustment as having been accomplished.

Hilary's argument is simply a collateral attack on the prior order approving the allocation. In any event, the only reason the lot line adjustment has not taken place is Hilary's refusal to cooperate. She may have a legal right to refuse to cooperate, but it is only fair that she bear the burden of her refusal. The trial court did not err in ordering that the assets not be reallocated.

That portion of the order requiring Hilary to execute documents for a lot line adjustment is reversed. In all other respects, the order is affirmed. Each party is to bear her own costs.

Perren, J., concurred.

**YEGAN, J.**—I concur in the result under compulsion of California Supreme Court precedent. Here there are three things of which I am fairly certain: First, subject matter jurisdiction may be raised for the first time on appeal without having first made objection thereto in the trial court. General principles of consent, estoppel, waiver, and theory of trial have no application. (See, e.g., *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325]; *Summers v. Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; see also 9 Witkin, Cal. Procedure (4th ed. 1977) Appeal, §§ 383, p. 383 [estoppel], 388, p. 439 [waiver], 399, pp. 451-452 [theory of trial].)

Second, the Court of Appeal and its justices must accept and follow California Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court.* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) But as the late Bernard Witkin would say, just because we are bound, does not

mean we are gagged. (Witkin, Manual on Appellate Court Opinions (1977) pp. 168-169; see also *People v. Musante* (1980) 102 Cal.App.3d 156, 159-162 [162 Cal.Rptr. 158] (conc. opn. of Gardner, P. J.).)[1] Respectful suggestion to the California Supreme Court or the Legislature that the law should be changed is a legitimate function of the Court of Appeal or one of its justices.

Third, Sam Dabney is rolling over in his grave.

The majority opinion fairly states the facts and procedural history but certain additional observations should be made: Appellant and her mother have differing views concerning administration of the trusts. The disagreement was so vehement that they mediated many of their disputes in 1998. At that time, appellant "agreed to be available to discuss the property with the professionals who will be hired by the Trust to accomplish the lot line adjustment."

Appellant has been aware that a lot line adjustment was appropriate years before the subject order directing her to execute such document was made. The lot line adjustment neither adds nor subtracts land from either of the two parcels and in fact makes them both legal parcels.

When appellant agreed to cooperate in the lot line adjustment, she was represented by counsel. Prior to the entry of the order to sign the lot line adjustment, appellant was given oral and written notice of her mother's intent to ask the probate court to make the lot line order. The only written objection she made was that the $5,836.18 in costs to do so should be allocated as an income expense rather than a principal expense.

At the hearing on the motion, neither she nor her attorney objected to the signing of the lot line order. In this situation, it is not surprising that the probate court signed the order for a lot line adjustment. Thereafter, she did not ask for reconsideration, bring a motion for new trial, or ask for any other type of post order relief. At no time did she utter the phrase, "subject matter jurisdiction."

Appellant filed a notice of appeal and retained new counsel, who, for the first time on appeal argues lack of subject matter jurisdiction. I do not fault counsel for doing so. But raising the issue does not necessarily mean that he

---

[1]Known for his ability to make a point with humor, this highly respected jurist said: "I fully recognize that under the doctrine of stare decisis, I must follow the rulings of the Supreme Court, and if that court wishes to jump off a figurative Pali, I, lemming-like, must leap right after it. However, I reserve my First Amendment right to kick and scream on my way down to the rocks below." (*People v. Musante, supra,* 102 Cal.App.3d at p. 159.)

should prevail. The premise to this contention is that appellant, as an individual person who owns approximately 15 percent of the studio property, is not subject to trust administration. (*Buckley v. Superior Court* (1894) 102 Cal. 6 [36 P. 360]; see also *Texas Co. v. Bank of America etc., Assn.* (1935) 5 Cal.2d 35, 39 [53 P.2d 127]; cf. Prob. Code, §§ 17000, 17001.) In her reply brief and in a brief moment of candor, appellant says that she "had the unfettered right to 'change her mind' or decide 'not to cooperate' with her 85 percent co-tenant or to just not want to sign because she was ornery, petty, having a 'bad hair day' or just plain 'unhappy' with other unrelated things." In this situation, appellant should not be permitted to "change her mind."

Allowing her to be heard on the merits for the first time on appeal is not only unfair to respondent, it is also unfair to the trial court. As far as it knew, it was called upon to sign an uncontested order on a matter of trust administration and it was at least 85 percent correct. Appellant's "change of mind" allows her to defeat the orderly administration of justice at the trial and appellate levels. This is not the paradigm of how litigation should proceed.

Sam Dabney would not be pleased with today's ruling. He retained counsel who drafted a comprehensive estate plan to provide for both his wife and children. That his wife and daughter cannot agree on the proper funding of the trusts and allocations of assets should not be a springboard for litigation of a lot line adjustment which benefits everyone. This dispute is now infused with new life. Our reversal of the lot line adjustment order proves the old adage that the law does not exist to prevent a person from his or her own folly.

I am required by oath of office and the rule of *Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d 450, to follow the law as declared by the California Supreme Court. By concurring in the judgment reversing that portion of the order which requires appellant to execute the lot line adjustment, I have done so. The Supreme Court has declared that lack of subject matter jurisdiction can be raised for the first time on appeal. As the majority opinion indicates, the probate court had no subject matter jurisdiction to require a 15 percent cotenant to execute a lot line adjustment in her individual capacity. While bound, I am not gagged. (Witkin, Manual on Appellate Court Opinions, *supra*, at pp. 168-169.) Like Presiding Justice Gardner, I reserve my First Amendment right to express my view on the law as it should be. (*People v. Musante, supra*, 102 Cal.App.3d at p. 159 (conc. opn. of Gardner, P. J.).)

In my opinion, the present order partially reversing the judgment results in a miscarriage of justice. Appellant should not be permitted to raise lack of

subject matter jurisdiction for the first time on appeal. Appellant perhaps believes that her "change of mind" will have some beneficial effect on the allocation of trust assets and the valuations placed thereon. She is wrong. The rulings thereon are long final.