Filed 3/18/13  McCray v. Metropolitan Transit System CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EMANUEL McCRAY, | D060802 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00097606-CU-PA-CTL) |
| METROPOLITAN TRANSIT SYSTEM et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, William R. Nevitt, Jr., Judge.  Affirmed.

Plaintiff, Emanuel McCray, appeals two judgments entered against him after the trial court sustained without leave to amend the demurrers of defendants, Metropolitan Transit System (MTS) and USAA Casualty Insurance Company (USAA) and others.[1]

---

[1]    The first amended complaint (FAC) named dozens of additional individual and entity defendants allegedly associated with MTS and USAA.  For convenience, we refer only to MTS and USAA.  McCray has represented himself at the trial court and on appeal.

On appeal, McCray contends the court erred because the FAC's allegations were sufficient to withstand demurrer. We disagree, and thus affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

Because we review a demurrer ruling, we recite the facts alleged in the FAC. (*Moe v. Anderson* (2012) 207 Cal.App.4th 826, 828.)

On March 28, 2006, McCray was driving an airport shuttle when USAA's insured caused a "t-bone[]" collision. As a result, McCray suffered severe, permanent, and disabling injuries, including cervical spine injuries, visual impairment, and the onset of diabetes. McCray accepted and negotiated a $600 settlement check from USAA, but at the time of settlement, he was unaware of the severity of his injuries.

On November 13, 2009, McCray was a passenger on an MTS bus. The bus driver was driving too fast for conditions and when he applied the brakes, McCray "was violently ejected from his seat." McCray suffered permanent injuries including a "possible impingement of C6 nerve root," diabetes, and vision impairment. On November 20, 2009, McCray filed a claim for personal injuries with MTS. The following day MTS rejected the claim, denying negligence since the bus driver had "to break [*sic*] for [an] accident in front" of the bus. MTS, however, offered McCray six monthly transit passes as a goodwill gesture in exchange for a full release of claims.

McCray brought one lawsuit against USAA and MTS. The FAC, which exceeded 100 pages, included causes of action titled as follows: (1) "Government Tort Liability" against MTS; (2) "Common Law Fraud & Intentional Misrepresentation (And Violation of Cal. Bus. & Prof. Code §§ 17200, et seq.)" against MTS; (3) "Unfair Competition

2

(Federal Mail Fraud) (Violation of Title 18 U.S.C. § 1341 & Cal. Bus. & Prof. Code, §§ 17200 et seq.)" against MTS; (4) "Unfair Competition (Federal Wire Fraud) (Violation of Title 18 U.S.C. § 1343 & Cal. Bus. & Prof. Code §§ 17200, et seq.)" against MTS; (5) "Unfair Competition (Federal Mail Fraud) (Violation of Title 18 U.S.C. § 1341 & Cal. Bus. & Prof. Code §§ 17200 et seq.)" against USAA; and (6) "Common Law Fraud & Intentional Misrepresentation (And Violation of Cal. Bus. & Pro. Code §§ 17200 et seq.)" against USAA. (Boldface type and some capitalization omitted.)

The first cause of action claimed damages against MTS attributable to the bus accident. The gist of the second through fourth causes of action was that MTS knew the bus driver was negligent, and that McCray suffered serious injuries, and MTS's denial of liability, and an offer of six monthly transit passes, was fraudulently intended to get him to abandon his claim. The mail fraud and wire fraud counts were based on MTS's communications with McCray through letters and a phone message. Further, the FAC alleged the settlement offer was "part of a purposeful scheme or artifice to defraud all health, life, property, and casualty insurers by either not paying for its victims' health care at all or by paying well below market rates."

The gist of the fifth and sixth causes of action was that USAA committed fraud by denying its insured's liability and settling the matter with McCray for only $600 when USAA had superior knowledge that "an injury to the cervical spine caused by an automobile collision could trigger the onset of symptoms of diabetes and other complex medical complications." USAA allegedly committed unfair business practices by "intentionally breach[ing] [its] contract with [its insured] to gain an unfair competitive

3

advantage over other insurers who refrain from breaching their contracts with their insureds."

MTS demurred to the FAC, arguing, among other things, that McCray did not comply with the Government Claims Act (Gov. Code, § 810 et seq.),[2] including the requirement that he file his court action within six months of receiving notice of MTS's rejection of his claim (§ 945.6, subd. (a)(1)). McCray did not oppose the demurrer, and the court sustained it without leave to amend.

USAA moved to strike the FAC's sixth cause of action, on the ground it violated the court's sustaining of a demurrer to the same cause of action in the original complaint without leave to amend. The court granted the motion. USAA also demurred to the fifth cause of action, arguing it did not allege facts to support a claim of unfair competition under Business and Professions Code section 17200. The court sustained the demurrer without leave to amend. The court entered judgments of dismissal for MTS and USAA.

## DISCUSSION

### I

### *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint alleges facts sufficient to state a cause of action under any possible legal theory. [Citations.] ' "We treat the demurrer as

---

[2] Future statutory references are also to the Government Code unless otherwise specified.

4

admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Moe v. Anderson*, *supra*, 207 Cal.App.4th at pp. 830-831.) "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

II

*Dismissal of Claims Against MTS*

McCray contends the court erred by dismissing the FAC on the ground of the Government Claims Act. We disagree.

The California Supreme Court has recently discussed the Government Claims Act, as follows. "Suits for money or damages filed against a public entity are regulated by statutes contained in division 3.6 of the Government Code, commonly referred to as the Government Claims Act. We have previously noted that '[s]ection 905 requires the presentation of "all claims for money or damages against local public entities," subject to exceptions not relevant here. Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year. (§ 911.2.) "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been

5

deemed to have been rejected . . . ."  (§ 945.4)  "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." ' "  (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989-990.)

The statute of limitations for filing a lawsuit after rejection of a claim is six months from the date of notice of the rejection.  (§ 945.6, subd. (a)(1).)  "The deadline for filing a lawsuit against a public entity, as set out in the government claims statute, is a true statute of limitations defining the time in which, after a claim presented to the government has been rejected or deemed rejected, the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim."  (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209.)  The "intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities.  Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.' "  (*DiCampli-Mintz v. County of Santa Clara*, *supra*, 55 Cal.4th at p. 991.)

McCray filed his original complaint, which is subject to judicial notice, on August 9, 2010.  The FAC alleges McCray filed a claim with MTS on January 20, 2010, using an MTS claim form, and on January 21, 2010, MTS rejected the claim.  Thus, the pleadings showed on their face that McCray did not comply with the six-month statute of limitations.

McCray's opening brief merely asserts the FAC alleged, "the government tort claims notice requirements had been met."  As discussed, however, the pleadings showed

6

he did not comply with the six-month statute of limitations set forth in section 945.6, subdivision (a)(1).

In his reply brief, McCray cursorily asserts MTS is estopped from raising the statute of limitations. A "party apparently entitled to the [statute of limitation] defense may nevertheless be estopped, under some circumstances, to invoke it." (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 103, p. 676; *D.C. v. Oakdale Joint Unified School Dist.* (2012) 203 Cal.App.4th 1572, 1582 ["Case law has recognized . . . that the doctrine of estoppel may apply to estop a public entity from blocking a section 946.6 petition due to the running of the six-month period."].) An appellant forfeits review of an issue, however, by not raising it in his or her opening brief. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1478.) " 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' " (*Id.* at p. 1477.) McCray is not exempt from appellate rules "because he is representing himself on appeal in propria persona." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

In any event, McCray does not cite any allegations in the lengthy FAC that arguably pertained to estoppel, and he does not assert he could amend the pleading to add such allegations. Rather, McCray submits that "[b]y arguing the government claim was filed 19 days beyond the six months allowed by the statute, MTS" has admitted "the claim was timely filed." The issue, however, is not whether McCray timely submitted his *claim* to MTS, but rather whether he commenced his *lawsuit* within six months of his receipt of MTS's notice of rejection of the claim.

McCray also asserts estoppel applies because MTS denied his claim "less than 24 hours upon receipt, making it improbable that an investigation was conducted."  McCray, however, cites no authority for the proposition that the speed of a public agency's claim response, or the scope of its investigation, can subject it to estoppel on the statute of limitations issue.  "We need not consider an argument for which no authority is furnished."  (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.)  We affirm the judgment for MTS.[3]

III

*Dismissal of Claims Against USAA*

In his opening brief, McCray offers no cogent explanation for why the court's rulings on USAA's demurrer to the FAC's fifth cause of action, and its motion to strike the sixth cause of action, were improper.  His opening brief merely asserts "the fifth cause of action . . . incorporated an allegation of agency and was sufficient against a general and special demurrer," and the sixth cause of action "alleged common law fraud and intentional misrepresentation involving [USAA's] attempt to conceal from [him] that he has sustained severe, permanent and disabling injuries," and "also incorporated an allegation of agency that was sufficient."  The brief does not discuss the elements of any cause of action against USAA, explain why the FAC alleged sufficient facts to constitute a cause of action, or address the court's finding it had previously sustained a demurrer to the original complaint's sixth cause of action without leave to amend.  " 'We are not

---

3    Given our holding, we do not consider MTS's alternative arguments that the demurrer was also proper on other grounds.

bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

In his reply brief, McCray argues the fifth cause of action was viable under the unfair competition law (UCL), Business and Professions Code section 17200 et seq. " '[Business and Professions Code] [s]ection 17200 of the UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with [Business and Professions Code] Section 17500) of Part 3 of Division 7 . . . ." Therefore, an act or practice is "unfair competition" under the UCL if it is forbidden by law or, even if not specifically prohibited by law, is deemed an unfair act or practice.' " (*Troyk v. Farmers Group*, *Inc*. (2009) 171 Cal.App.4th 1305, 1334-1335.) " ' "[Business and Professions Code] [s]ection 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citation.] In addition, under [Business and Professions Code] section 17200, 'a practice may be deemed unfair even if not specifically proscribed by some other law.' [Citation.]" . . . "Under [Business and Professions Code] [section 17204], a private plaintiff may bring a UCL action even when 'the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.' " ' " (*Id.* at p. 1335.)

The predicate for the fifth cause of action's Business and Professions Code section 17200 claim was title 18 United States Code section 1341, a criminal statute prohibiting

9

mail fraud.  The FAC alleged that beginning in or about August 2006, USAA falsely represented to McCray in letters that USAA's insured did not cause him to suffer any injury or damage, when it knew better, and the representations were designed to cause him to abandon his claim.

McCray, however, cites no legal authority suggesting an insurer's denial of liability or lowball settlement of a third party personal injury claim constitutes a "scheme or artifice to defraud," or an intention to "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises."  (18 U.S.C. § 1341.)  McCray was not USAA's insured, and it was up to him to protect his own interests in negotiating with USAA.  Thus, we affirm the judgment for USAA.

## DISPOSITION

The judgments are affirmed.  MTS and USAA are entitled to costs on appeal.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.


10