Filed 6/20/23  G.M. v. H.D. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| G.M.,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>H.D.,<br><br>    Defendant and Appellant. | D079567<br><br><br><br>(Super. Ct. No. ED96442) |

APPEAL from orders of the Superior Court of San Diego County, Saba Sheibani and Wendy M. Behan, Judges.  Affirmed.

J.M., in pro. per., on behalf of Appellant.

H.D., in pro. per., on behalf of Respondent.

H.D. (Mother) and J.M.[1] (Father) share minor child (G.M.).  In May 2021, Mother filed a request for a Domestic Violence Restraining Order (DVRO) against Father.  Following a half-day evidentiary hearing, the court granted a two-year DVRO.  The court awarded Mother primary legal and

---

[1]    Appellant is referred to as both G.M. and J.M. in the court records and his name appears as J.M. in the appellant's briefs and notice of appeal.

physical custody and ordered visitation for Father. Father moved to set aside the order, and the court denied the request.

Father appeals two orders: a July 16, 2021 issuance of a two-year DVRO and custody order, and a September 14, 2021 order declining to set aside the July 16 orders. Father's primary focus on appeal is the court's issuance of the DVRO. He contends the court abused its discretion by (1) admitting improperly lodged "fake documents," (2) considering Father's act of hitting a minor in 2015, and (3) considering video evidence that was recorded in violation of Father's right to privacy. Father also mentions in his statement of facts that the court failed to inform Father of Family Code[2] section 3044, subdivision (h), and it did not allow Father to respond to the section 3044 presumption that an award of custody to Father was detrimental to G.M.'s interests before making a custody determination. We conclude the court did not abuse its discretion, and we affirm.

## BACKGROUND AND PROCEDURAL FACTS

Mother and Father share one minor child, G.M., who was born in June 2014. Mother also has a 25-year-old daughter (Daughter) from a previous relationship who does not reside with Mother, and a 14-year-old son from another relationship who lives with Mother.

Mother filed a request for order regarding custody of G.M., seeking a move-away order. In his responsive declaration, Father wrote that G.M. would have the best opportunity with him. Father also expressed concern about Mother's relationship with Daughter, stating they are abusive to each other.

Family Court Services supplied a report, dated March 16, 2021, in which it recommended the parents share joint legal custody. Based on

---

[2]  Statutory references are to the Family Code unless otherwise specified.

Mother's intention to move out of state, the report recommended that Father have primary physical custody of G.M. It recommended that G.M. have no contact with Daughter unless mutually agreed upon by the parents.

At the March 29, 2021 custody hearing, the court explained that Mother filed a lodgment, but it had not looked at the documents. The parties indicated that thus far they shared joint physical custody, and they arranged parenting time as mutually agreed. At the time of the hearing, G.M. stayed with Father during the week because Father enrolled G.M. in a school one hour from Mother's home, where G.M. could attend school in person instead of online.[3] The court set a full day evidentiary hearing for May 26 to address Mother's move-away request. The parties stipulated to interim custody orders.

On May 12, 2021, Mother filed for and received a temporary restraining order against Father. The restraining order hearing was set for May 27, 2021.

On May 26, 2021, Father's attorney told the court the restraining order should be litigated before the court determined custody because of the presumption required by section 3044. Mother told the court she was no longer requesting a move-away order; the court explained it still needed to address custody and visitation, as well as the request for a DVRO. The court told the parties it would not order joint physical custody because of the distance between parents; physical custody would revolve around the child's school. The court continued the matter to July 16, 2021 for a half-day evidentiary hearing on the restraining order.

---

[3]    The elementary school near Mother was closed to in-person learning; students attended virtually.

Mother filed a supplemental declaration in support of the request for DVRO. In it, she reported that on May 10, 2021, during a custody exchange at Father's property, she parked next to Father's home in a church lot. She heard Father ask G.M. what he did over the weekend. Mother began filming Father's interaction with G.M. on her phone, and Father told her to put away the phone or he would "shove it up [her] ass." Father approached Mother's vehicle with son's baseball bag containing bats, and Father grabbed Mother's wrist and pulled it toward him. Father told Mother he would soon be taking care of G.M. full time and began to walk away. Mother filed a request for a DVRO.

Mother visited a doctor two days later because her wrist hurt, and she was given a splint. After the temporary restraining order (TRO) issued, Father sent Mother an email complaining about the TRO.

On June 13, 2021, Mother messaged Father through a program called Talking Parents to let Father know G.M. was cursing and using racial slurs after a recent visitation. Father accused Mother of fraudulently filing the restraining order at Mother's partner's request. Father also informed Mother that he instructed G.M. to call police if something seemed like it was not right, and Father would do a check-up or have the sheriff follow up.

On June 17, 2021, Father sent Mother a message that she was unsafe and unfit, and he would make sure the judge figured her out. On the phone that night, Father asked G.M. if Daughter or Mother's partner had been to Mother's home, and when G.M. answered in the negative, Father told G.M. that Father would spank him if G.M. was lying.

Mother reported that Father grabbed G.M. by the collar on June 27, 2021 and threatened to spank G.M. if G.M. did not tell the truth about what occurred during Mother's parenting time.

On July 16, 2021, the parties were represented by counsel at the evidentiary hearing. The court admitted Mother's request for a DVRO, her declaration, and her supplemental declaration. Father's attorney objected to the admission of the video Mother recorded on May 10, arguing Father had an expectation of privacy because the video occurred while Father stood in his yard and had demanded Mother stop recording. The court overruled the objection because it found the recording was not of a confidential communication, and it played the video and admitted it into evidence.[4]

The court also admitted a police report regarding the May 10 incident. The report indicated Mother had no visible injuries. The court also admitted several text exchanges and emails.[5] Mother also filed a police report regarding Father's messages. Father's attorney objected to the admission of that report as hearsay. The court partially sustained the objection, excluding statements Mother made to police but admitting the peace officer's observations.

Mother testified that in 2015 Father punched then-17-year-old Daughter in the face. She said Child Welfare Services found substantiation for physical abuse. She also testified that Daughter tried to poison G.M. by putting bleach in his food while he was in Mother's care and that Daughter was arrested in 2019, when she was 21 or 22, for attacking a first responder. Mother offered to supervise visits between Daughter and G.M.

Mother acknowledged G.M. did better attending school in person than online. When Father's attorney asked Mother about G.M.'s grades, the court asked its relevance. Father's attorney explained it related to child custody,

---

[4]     The exhibits are not in the appellate record.

[5]     This included messages marked as Exhibit K.

and the court said it did not have time; if it issued the restraining order, then it would get into custody issues. The attorney explained there was still an issue of rebutting the section 3044 presumption, and the court said it did not have time unless everyone wanted to return in January.

Father testified that Mother dropped off G.M near the front of his home. Father asked G.M. how his visit with Mother was, and Mother began video recording. When Father asked Mother to put away her phone and said if she did not, he would "shove it up her ass," he was laughing because he was trying to be funny and nice. Father denied grabbing Mother's wrist and testified he remained three or four feet away from her car door.

Father also testified that he believed Mother's partner had convinced her to fabricate the incident to request the restraining order. He testified that a text message to Mother referencing "[partner]'s choke support" was a typo because he used a voice text; it should have said "child support." Father testified that his message "I hope you're ready to die. A little dose of your own medicine" was a typo because he meant he hoped Mother would get a dose of what she had been doing to him.

Father admitted to hitting Daughter in 2015 and explained he did so in reaction to her attacking him and scratching him. He also admitted that he told G.M. that if G.M. did not tell the truth, Father would spank G.M., but he denied grabbing G.M. by the collar.

Father testified that Daughter poisoned G.M. in 2015. He believed Mother did not have control over Daughter and worried she would cause harm to G.M. if she were permitted to be around him.

During closing arguments, Mother's attorney requested a five-year restraining order, and he argued a preponderance of evidence showed it was more likely than not that domestic violence had occurred because Father had

6

been threatening and harassing Mother and repeatedly violated the TRO. Mother also requested sole legal custody and primary physical custody, with visitation for Father on the weekends, as well as contact between Daughter and G.M., at least online or digitally.

Father's attorney argued Mother instigated the May 10 interaction, that Father's comments were jokes because he was laughing, that the video did not show Father grabbing Mother's wrist, and that the police report did not reference any visible injuries. Father wanted primary physical custody so G.M. could remain in his current school where he was doing well and had friends.

The court found Mother met her burden of proof. It explained she testified to the abuse and admitted evidence corroborating her testimony. It also found that Father violated the TRO several times with messages that violated its terms, and those could separately form the basis for a permanent DVRO. The court indicated the video clearly showed Father grabbing Mother's wrist based on Mother's statements on the recording and the camera's movement. It did not find Father's testimony to be credible, and it did not think Father's comment about shoving the phone up Mother's ass was a joke. The court found, based on the totality of the evidence, that Mother met her burden. It granted the DVRO for two years, setting it to expire July 16, 2023.

The court found section 3044 applied based on its finding of abuse, and it found that Father had failed to rebut the presumption. The court also commented that Father had acted in anger and found it was not in G.M.'s best interest to be in Father's primary care. The court found that there would be stability and continuity with Mother because there were significant periods when Mother was the primary caregiver and noted that G.M. had

7

been staying with Father only because the school there was open for in-person learning. The court did not hold it against Mother that G.M., who was only five or six during the school year, was having trouble learning online.

The court modified the recommendations in the March 16, 2021 Family Court Services report based on its finding of abuse and issuance of a restraining order. It awarded sole legal custody to Mother and primary physical custody to Mother. It assigned the first, second, fourth, and fifth weekends of the month to Father for visitation, and it denied Mother's request for contact between Daughter and G.M.

On July 23, 2021, Father filed a motion to set aside the July 16 order and filed a request for order for joint legal custody and primary physical custody, as well as an abduction prevention order. He also requested Mother pay child support. Father argued his attorney was not prepared for the restraining order hearing, and there was evidence to rebut Mother's allegations that was not submitted.

Mother opposed Father's requests and submitted a declaration that Father was continuing to harass her. She argued there was no evidence of inadequate representation, and Father did not claim to have new evidence that was previously unavailable.

At the hearing in September 2021, a different judicial officer presided than the one who issued the DVRO. Both parties were self-represented. Father argued there was excusable neglect because he was unable to meet with his attorneys in person due to Covid-19 restrictions, and as a result, he was surprised by the evidence Mother presented at the hearing. He also contended that Mother lodged documents without him or his attorney knowing what was lodged but admitted he could not speak to specifics. He further argued the court did not comply with section 3044, subdivision (h) or

8

inform him of that section. He told the court he did not understand he could lose custody as a result of the section 3044 presumption. He also argued the court should not have admitted the video because it violated "Evidence Code" section 632.[6] He told the court the video had been edited and said he could present new evidence because the sheriff would testify on his behalf about the May 10 incident.

The court noted the evidentiary hearing took three hours during which both parties were represented by counsel and had an opportunity to present evidence and cross-examine witnesses. It noted the DVRO was issued based on multiple pieces of evidence, including Mother's testimony and physical exhibits corroborating it. It also explained that the sheriff's testimony would not be new evidence because Father was aware of the sheriff and chose not to call him to testify. The court denied the motion to set aside the order. The court also made child support orders.

Father timely appealed.

## DISCUSSION

### A. Presumption of Correctness and Appellant's Burden

An appellant's status as a pro. per. litigant does not exempt him or her from the rules of appellate procedure or relieve the burden on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) We treat pro. per. litigants like any other party, affording them " 'the same, but no greater consideration than other litigants and attorney.' " (*Ibid*.) A judgment is presumed correct on appeal, and it is the appellant's burden, whether

---

[6] Father referenced the code section as Evidence Code section 632. However, that section of the Evidence Code regards presumptions affecting the burden of producing evidence. Penal Code section 632 addresses the admission of a recording of a confidential communication in a judicial proceeding.

proceeding in pro. per. or represented by counsel to "affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881.) "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*); see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone & Fyke*) ["We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived"]; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 (*Dabney*) [court disregards argument for which no authority is furnished].)

### B. Standard of Review

We review the admissibility of evidence for an abuse of discretion. (Evid. Code, § 310; *People v. Waidla* (2000) 22 Cal.4th 690, 717 ["Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence"]; *People v. Hall* (2010) 187 Cal.App.4th 282, 294.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon Enterprises*), quoting *People v. Carmony* (2004) 33 Cal.4th 367, 377.) Additionally, an " '[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' [Citation.]" (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 (*Horsford*).)

C.  Challenges to Admission of Lodged Documents

Father contends the court abused its discretion by allowing the "improper lodgment of fake documents" on the day of the hearings and argues that absent the lodged documents, there would have been no evidence to support the domestic violence claims.  Father comments in his opening brief that "[m]any of the documents lodged on the day of this hearing were very damming, because they were fake, altered, re-sequenced, and clipped text messages, and they should never have been allowed into evidence. . . ."

Father references a "hearsay police report."  However, Father does not explain which police report he references.  His attorney did not object to the admission of the police report detailing the events of May 10, so he has forfeited any challenge to it.  (*People v. Booker* (2011) 51 Cal.4th 141, 170 (*Booker*) [failure to timely object forfeits claim]; *People v. Davis* (2008) 168 Cal.App.4th 617, 627 (*Davis*) [timely and specific objection generally required]; Evid. Code § 353, subd. (a).)  The court limited the admissibility of the second police report addressing Father's harassing messages to the peace officer's observations.  Father does not explain why the court abused its discretion by admitting this evidence; nor does he explain how he suffered prejudice as a result.  We also note that Father's attorney relied on the May 10 police report in his closing statement, arguing that the police report did not reference any visible injury.

Father also references Exhibit K, a series of messages that he and Mother exchanged between June 11 and 14.  Again, Father does not explain why it was error for the court to admit this evidence.  He indicates that the evidence was somehow modified, but nothing in the record supports such an allegation.  Mother's attorney commented that the font was small; however, nothing suggests the text was illegible, and Father's attorney did not object to

11

its admission.  Thus, any challenge to this evidence is forfeited.  (See *Booker*, *supra*, 51 Cal.4th at p. 170.)  Father also does not explain why he believes the messages were falsified or otherwise explain why it was an abuse of discretion to admit this exhibit.

Finally, Father does not contend his attorney did not receive the documents by July 6, as part of the evidence exchange in advance of the hearing.  Nor does he explain why he believes they were fake or altered.  He also does not supply any evidence to support those allegations.  In other words, he does not carry his burden of demonstrating the admission of evidence at the hearing was an abuse of discretion.

D. Challenge to Consideration of Allegations of Abuse Against Daughter

Father contends that allegations of abuse against Daughter are hearsay, and they should not have been considered to support the issuance of a DVRO.[7]

Evidence Code section 1200 defines hearsay as a statement made by someone other than the witness testifying and offered to prove the substance of the matter asserted in the statement.  Unless an exception applies, hearsay is not admissible.  (Evid. Code, § 1200, subd. (b).)

The evidence of which Father complains is not hearsay because it is not testimony regarding a statement made outside of court.  Mother testified that Father punched Daughter in the face in 2015, when Daughter was 17.  Mother testified to Father's conduct, which she observed.  Moreover, Father admitted he hit daughter because she was scratching him and attacking him, and he reacted to that.  This also was not hearsay because Father testified to

---

[7]    Father did not object to the admission of this testimony at trial; thus, the challenge was forfeited.  (*Booker*, *supra*, 51 Cal.4th at p. 170; *Davis*, *supra*, 168 Cal.App.4th at p. 627; Evid. Code § 353, subd. (a).)

his conduct, not something said outside of court. The court did not abuse discretion by admitting this non-hearsay evidence.

Additionally, the court did not base its decision to issue the DVRO on the 2015 incident between Father and Daughter. Instead, the court pointed to Mother's testimony regarding the May 10 incident with Father, the police report that corroborates what occurred that day, and the threatening messages Father sent Mother in violation of the TRO as support for issuing the DVRO.

### E. Challenge to Admission of Video Evidence

Father contends the court abused discretion by admitting video evidence because the recording constituted common law invasion of privacy and violated Penal Code section 632.[8]

A privacy violation based on the common law tort of intrusion is a private cause of action that should be raised in a civil lawsuit, not as an objection to the introduction of evidence. (See, *e.g.*, *Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286.) The intrusion cause of action has two elements: "[T]he defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second the intrusion must occur in a manner highly offensive to a reasonable person. [Citations.]" (*Ibid.*) Father addresses these elements in his briefs. However, this tort liability is separate from the issue of whether the evidence is admissible.

Father also mentions "632" to argue that he has a reasonable right to privacy, and Mother's video recording of him in his yard violated that privacy. Penal Code section 632 describes the crime of invasion of privacy,

---

[8]    Father does not identify the code section under which he contends there was an invasion of privacy, referencing only "632."

which occurs when a person records a confidential communication without the consent of all parties. (Pen. Code, § 632, subd. (a).) It prohibits using in any judicial proceeding evidence obtained through the recording of a confidential communication in violation of Penal Code section 632, except as proof of violating Penal Code section 632. (*Id.*, subd. (d).) Its definition of "confidential communication" excludes "a communication made . . . in any . . . circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (*Id.*, subd. (c).) The standard for confidentiality is whether there is "an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 777 (*Flanagan*).)

To demonstrate the court abused discretion by admitting the video evidence, Father must show the communication was a confidential communication. Father does not explain why there is an objectively reasonable expectation that the conversation would not be overheard or recorded. Father could see Mother recording him before he told her to shove the phone up her ass and before he approached her vehicle; thus, there was no reason his interaction with her would not be overheard or recorded. (See *Flanagan, supra*, 27 Cal.4th at p. 777.) The trial court's conclusion that the video did not contain a confidential communication was not an abuse of discretion. It did not " 'transgress the confines of the applicable principles of law' " (*Horsford, supra*, 132 Cal.App.4th at p. 393) and was not otherwise irrational or arbitrary such that " 'no reasonable person could agree with it.' " (*Sargon Enterprises, supra*, 55 Cal.4th at p. 773.)

Even had the court abused its discretion by admitting the video evidence, Father does not identify any resulting prejudice. The court did not

14

rely solely on the video evidence to determine Mother had demonstrated via a preponderance of the evidence that Father committed domestic abuse. The court found Father lacked credibility. It explained that Mother's testimony as to what occurred was itself sufficient to support the restraining order, and it further found that additional documentary evidence corroborated Mother's testimony. Thus, even had the court declined to consider the video evidence, the outcome here would not have been different.

## F. Family Code Section 3044

Father mentions in his statement of facts that the court failed to comply with section 3044 subdivision (h) and did not permit him to rebut the presumption against custody outlined in section 3044, subdivision (a). Despite the passing reference to these issues, Father does not develop an argument about the impact of these alleged errors. He does not incorporate information about these events into his arguments. His appeal focuses on why he contends the court improperly issued the DVRO, not why the subsequent custody order was improper. It is not our place to develop an appellant's arguments. (*Falcone & Fyke, supra*, 164 Cal.App.4th at p. 830.) The failure to make reasoned argument or to cite any authority about these issues waives them. (*Nelson, supra*, 172 Cal.App.4th at p. 862; *Dabney, supra*, 104 Cal.App.4th at p. 384.)

DISPOSITION

The orders are affirmed.  Parties to bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


BUCHANAN, J.