Filed 4/26/16  Kainz v. Marder CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOACHIM FRANZ KAINZ,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TAMIR MARDER,<br><br>　　　Defendant and Appellant. | A145068<br><br>(San Francisco County<br>Super. Ct. No. CCH15576641) |

Tamir Marder appeals a civil harassment restraining order entered against him under Code of Civil Procedure section 527.6.[1] that prohibits him from harassing, and requires him to stay away from, his next-door neighbor, Joachim Kainz, and Kainz's family.  Marder contends the restraining order should be reversed because:  (1) there is no substantial evidence of any harassment, (2) his conduct had a legitimate purpose, (3) the injunction is overbroad, and (4) it violates his First Amendment rights.

We reject these arguments, and affirm.

## BACKGROUND[2]

On February 17, 2015, San Francisco resident Joachim Kainz filed a petition requesting a civil harassment restraining order against Marder.  The two are next-door neighbors.  Kainz's petition sought protection for himself and his family who live in the

---

[1]  All further statutory references are to the Code of Civil Procedure.

[2]  We state the facts in the light most favorable to the judgment, consistent with the deferential substantial evidence standard of review.  (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

1

home, including his wife, their three-year-old son, four-year-old daughter, eleven-year-old son, Kainz's father and his mother-in-law.

Running between their houses is a 10-foot-wide shared walkway, which the parties refer to as an "easement."[3] It appears this walkway is the origin of the Kainz family's ordeal, and the place where much of Marder's disturbing conduct took place.

When the Kainz family moved in, the walkway was inaccessible because it was filled with clutter due to Marder's hoarding, but eventually was cleared out through the intervention of city officials. After that, Marder's hoarding was mostly confined to his own property (in his backyard and a nearby hillside), but Marder still continued to store clutter and debris there, leave hazards like broken glass and gasoline tanks lying around, and treated the space as solely his own. He declined the Kainzs's request to clean up the hazards, insisting instead they keep their children inside. And he told them many times he views the walkway as his own, because he has lived there longer than they have.

According to Kainz's petition, Marder consistently harassed Kainz and his family since they moved into their home in November 2013. The petition described numerous incidents, the specifics of which are discussed below, and the "great majority" of which took place in the shared 10-foot-wide walkway. Following the entry of a temporary restraining order, Kainz filed a declaration with lengthy additional documentation of his neighbor's conduct. Among other materials, it included building department records of the city's intervention efforts, dating back nearly a year, to curb Marder's hoarding. It also included nearly 20 pages of emails between Kainz and Marder over a nearly 12-month period starting in January 2014, mostly from Kainz, complaining of Marder's conduct and repeatedly asking him to stop contacting, approaching, or harassing the Kainz family and to stay off their property. Also attached were photographs of the debris and clutter Marder hoarded outside his home.

A hearing on the petition took place on March 11, 2015. Marder briefly testified on his own behalf, in a rambling and relatively incoherent colloquy in which he denied

---

[3] The walkway is actually a public right of way.

2

harassing or threatening the family, accused Kainz of being a "compulsive liar" and harassing *him*, alluded to his own mental health issues, complained about Kainz cutting down trees, and vaguely alluded to his need to get to the backyard to "organize" it so he could "comply with the city." At the conclusion of the hearing, the court issued the restraining order, and this timely appeal followed.

## DISCUSSION[4]

### I.

### *There Is Substantial Evidence that Marder Harassed the Kainz Family.*

Code of Civil Procedure section 527.6 provides an expedited procedure for preventing certain forms of harassment, and "was designed to provide a quick and simple procedure by which this type of wholly unjustifiable conduct, having no proper purpose, could be enjoined." (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 811; see § 527.6, subd. (a)(1).) As relevant here, Section 527.6 allows a person "who has suffered harassment as defined in subdivision (b)" to obtain an order "prohibiting harassment as provided in this section." (§ 527.6, subd. (a)(1).) Marder argues there is no substantial evidence harassment that occurred.[5] We could not disagree more.

In the first place, there is ample evidence of an intentional course of harassing conduct. Under the statute, "harassment" includes "a knowing and willful course of

---

[4] The parties' briefs rely heavily on factual assertions that are not supported by any citation to the appellate record, and many of which, as best we can tell, are not in this record. We disregard all factual statements not supported by a proper record citation, because it is not our obligation to comb through the record to substantiate them. (See *Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388, 392, fn. 2; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; Cal. Rules of Court, rule 8.204(a)(1)(C).)

[5] In ruling on a section 527.6 petition, the trial court is not required to make express factual findings; rather, the granting of the injunction itself necessarily implies all required factual findings. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 88–89.) We review the court's factual findings, whether express or implied, for substantial evidence. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) We review de novo, as a legal issue, "whether the facts, when construed most favorably in [the prevailing party's] favor, are legally sufficient to constitute civil harassment under section 527.6." (*Ibid.*)

3

conduct[6] directed at a specific person *that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose*. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3), italics added.) Here, Marder argues that his "proximity to [Kainz] as his neighbor while being present or working in his own yard are insufficient conduct for establishing 'course of conduct' harassment." And we agree. But it wasn't his "proximity" to Kainz and his family that was the problem. It was his behavior, which was anything but neighborly.

There is such a lengthy record of Marder's inappropriate conduct in this case, we refrain from detailing each and every encounter. Kainz demonstrated, among other things, that Marder was: stalking his family; videotaping his wife and children; taking pictures of his family; repeatedly making racist comments in front of the children about Kainz and his father (who are Austrian), calling them Nazis and Kainz's father "Hitler," and telling the children that in Germany handicapped people are being killed; repeatedly accusing Kainz of various misdeeds, including theft, "start[ing] a war" with Marder, interfering with Marder's work, depressing neighborhood home values, and "rambling [that] is unsettling for both [wife] and [mother-in-law] as well as the children,"; "peep[ing]" into the room where his four-year-old daughter sleeps and making obscene gestures to her; blocking his toddler son in the sidewalk to "to explain to him that his daddy is the 'scom [sic] of the earth'"; repeatedly confronting them when they came home, sometimes yelling and acting furiously towards them in those encounters; revving his car engine and driving erratically while Kainz's wife and two youngest children were trying to cross the street; blocking them from their own driveway and sometimes

---

**6** The statute further defines "course of conduct" as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or computer email. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6 subd. (b)(1).).

4

shoveling dirt on their driveway; dumping garbage; spraying dirt and water at their house and driveway; harassing workers fixing the Kainzs's gutters, by threatening to call the police to get them deported and shoveling dirt all over the Kainzs's driveway as they worked. And Kainz implored Marder not to speak to them anymore, telling him "You are not coming off [as] sane and people are scared of you." Things got so bad Kainz eventually told his family to call 911 the next time they felt threatened by Marder. And police repeatedly got involved.

This is a textbook case of harassment. None of it served any "legitimate purpose." (§ 527.6, subd. (b)(1).) The incidents we have described clearly meet the definition of a "knowing and willful course of conduct" that is harassing. (*Ibid*.)

That alone is a sufficient basis for the injunction, but it is by no means all. There also is substantial evidence of "a credible threat of violence" which also constitutes "harassment." (§ 527.6, subd. (b)(1).) And not just one threat but *many* threats.

A "credible threat of violence" is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).) Marder argues there is "[n]o evidence of any threat" in this record. Here again, though, Marder improperly ignores vast swaths of this record. Kainz demonstrated that Marder threw stones and other debris at the family from the walkway. Marder *got charged with battery* for assaulting Kainz's 69-year-old father-in-law in the walkway, kicking him repeatedly while the elder Kainz was kneeling on the ground cutting a tree stump. He hurled a five-gallon pot of dirt at the side of their house with such force the house got damaged, and then rushed Kainz and his wife with a pitchfork when they came outside which resulted in *another* criminal charge, this time for brandishing a weapon. He threw metal pipes at Kainz's toddler son and threatened to throw a five-pound stone through his youngest children's window. He would "rambl[e] on about how difficult it is for [him] to refrain from violence." Kainz captured Marder on videotape explaining "in a lengthy monologue" how you will strike out against me and my family. Another time, Marder threatened Kainz and his wife with "retribution" for supposedly destroying a

cherry tree. He threw a piece of wood at their house and punctured a shingle. On another occasion, Kainz emailed Marder, telling him "[f]rom what you have been telling me this morning, last night and many times in the past, I think you believe the following things: [¶] . . . [¶] You believe you did not even start defending yourself yet, but when you do, this will have dire consequences for me and my family. [¶] . . . [¶] You believe that I will get what I have coming. [¶] You believe that you are stronger than me and could win in a fight."

This is not a close question. This is the stuff of a neighbor's worst nightmare.

We also reject Marder's argument that his conduct had a legitimate purpose. He contends his behavior consisted solely of "residing, working in his own residence and yards, and or hoarding" which had a legitimate purpose no matter how annoying or harassing. But this record tells a much different story. There is no legitimate purpose for the incidents and threats we have described. Marder's behavior is nothing like a car parked innocently on a shared driveway, for no harassing purpose, as in the only authority he cites. (See *Byers v. Cathcart*, *supra*, 57 Cal.App.4th at p. 812.)

The evidence supporting the finding that Marder harassed the Kainz family was beyond substantial.

## II.

### *Marder's Remaining Contentions*

Next, Marder argues the restraining order is overbroad, and he cannot comply with it, because it supposedly prevents him from being within three yards of his own home. Relatedly, he argues it prevents him from accessing his own backyard because the three-yard stay-away order blocks his only means of egress and ingress to his backyard, which is the walkway between the two houses. He also suggests the restraining order is unconstitutional. We disagree.

First, the restraining order does not prohibit Marder from being within three yards of his own home, and Marder does not explain why he reads the order that way. Rather, it prevents him from being within three yards of his *neighbors* or *their home* when he's at his own house. Item 7(a) of the stay-away portion of the order directs him to stay 50

6

yards away from the Kainz family and their home (in subdivisions (1)–(3)). It then states, in subdivision (9), "3 yards when in, on or about 500 Joost Ave., San Francisco" which is Marder's home address. So, the three-yard limitation *modifies* the 50-yard limitation, meaning he can be as close as three yards to his neighbor's family or house when "in, on or about" his own residence. The trial court explained this at the hearing. Referring erroneously at first to the wrong address, it told Marder, "You must stay at least 50 yards away from them, their home, their children, school, their vehicles. *Except when you are at your own home* at 494 Joost Avenue, you must stay three yards away from them." The court then corrected itself and clarified, "When you're at 500 Joost Avenue, you must stay three yards away . . . ." Item 7(b) of the order also says expressly, "*This stay-away order does not prevent you from going to or from your home or place of employment.*" There is no ambiguity.

We also reject Marder's contention that the order should be reversed because the three-yard limitation somehow prevents him from accessing his backyard. According to Marder, "[t]he easement provides the only access to and from [his] backyard and is essential for [his] daily use," but his appellate brief contains no citations to the appellate record on this point; and as far as we can tell, there *is* no such evidence. So the argument is unreviewable.[7] Moreover, even if the three-yard limitation leaves him no room to get to his backyard through the walkway, there is no evidence he has no other potential means of accessing his backyard such as, for example, through a back door.

Nor is there any constitutional issue for this court to decide. In an argument heading, Marder's brief states that the restraining order should be reversed "because it is based on defendant's First Amendment rights of freedom of speech and free assembly." What then follows, however, is argument about his backyard access. In the absence of any legal argument concerning a constitutional violation, and no legal authority, this

---

[7] We also note the trial court told Marder the order probably does allow him access to his yard, and invited Marder to request a modification if the order didn't give him the access he felt he needed. We find nothing in this record indicating Marder has done so.

point is waived. (See *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 817; *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.) Furthermore, Marder did not argue below that the restraining order should be narrowly tailored in some fashion to accommodate his constitutional rights, so the issue has been doubly forfeited. " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' " (*Children's Hosp. and Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776.)

## III.

### *Admonishment of Counsel*

This appeal borders on frivolous, if not outright crosses the line. Any reasonable lawyer, sufficiently familiar with the principles and procedures governing appellate review to render competent representation on appeal (see Cal. Rules Prof. Conduct, rule 3-110), would agree it is "totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) The appellant's brief makes no argument that is even arguably meritorious. It cites no law remotely applicable to the facts (to the extent it cites the law at all). It makes sweeping assertions of constitutional injury accompanied by no legal argument or authority that, at bottom, is empty hyperbole. In some respects, it distorts the record. In others, it strays outside the record. And in large part, it just ignores the record altogether, disregarding *all* of the unfavorable evidence adduced below against the appellant, conducting substantial evidence analysis as if from behind a brick wall.

It is unclear to us whether the appellant's brief in this case resulted from a calculated strategy of willfulness, or lack of attorney competence, or some combination of both. Either is a serious potential violation of an attorney's ethical obligations. (See Cal. Rules Prof. Conduct, rule 3-110 [attorney competence]; *id*., rule 3-200 [prohibiting attorneys from, *inter alia*, "tak[ing] an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person"].)

8

We could issue an order to show cause as to why sanctions should not be imposed, or take further steps. Respondent has appeared pro per, however, and presumably has not incurred any legal fees; and imposing sanctions payable to the court at this juncture would do little to rectify the burden this appeal has already imposed on the court and its heavy workload, or the delay it has caused for parties to other cases pending before us. Instead, we emphasize that a license to practice law is not a license to do or say *anything* in writing before an appellate court. We trust that in the future counsel will display greater respect for the court and the appellate process than was shown here.

## DISPOSITION

The civil harassment restraining order entered on March 11, 2015, is affirmed.

_____
STEWART, J.

We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.


*Kainz v. Marder* (A145068)

10